# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GORSS MOTELS, INC., a Connecticut corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:17-cv-00010 |
| | ) | |
| v. | ) | **CLASS ACTION** |
| | ) | |
| LANDS' END, INC., a Wisconsin corporation, and JOHN DOES 1-5, | ) ) | |
| | ) | |
| Defendants. | ) | |

## LANDS' END, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Christopher L. Jefford
cjefford@bonnerkiernan.com
Bonner Kiernan Trebach & Crociata, LLP
100 Peral Street, 14th Floor
Hartford, CT 06103

Daniel P. Tighe (*pro hac vice*)
dpt@dcglaw.com
Donnelly, Conroy & Gellhaar, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110

Adam R. Doherty (*pro hac vice*)
adoherty@princelobel.com
Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, MA 02110

*Counsel for Defendant Lands' End, Inc*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................1

UNDISPUTED FACTS ..............................................................................................4

    A.  Gorss agrees to abide by Wyndham's System Standards ..................................4

    B.  Gorss receives faxes from Wyndham for years and instead of opting out, sends them to Anderson + Wanca .........................................................................................7

    C.  Gorss provides its fax number to Wyndham and never objects to receiving Wyndham-approved supplier faxes ............................................................................................7

    D.  Lands' End becomes an Approved Supplier and Wyndham sends three faxes referencing Lands' End .................................................................................................................8

    E.  Gorss sells its hotel and files more than twenty TCPA class action lawsuits against Approved Suppliers ................................................................................................9

GORSS'S CLAIMS ...................................................................................................10

ARGUMENT .............................................................................................................10

    I.  SUMMARY JUDGMENT SHOULD ENTER ON THE TCPA CLAIMS ....................10

        A.  The TCPA Does Not Apply to Faxes Such as These That Were Solicited ............11

        B.  Only Unsolicited Faxes Require Opt-Out Language ................................................16

        C.  The FCC's Elimination of the Solicited Fax Rule As a Result of the *Yaakov* Decision Moots Gorss's Argument that the Solicited Fax Rule Applies In This Case ..............................................................................................................................20

        D.  Gorss Lacks Standing Because It Has No Evidence of Injury Caused by The Alleged TCPA Violations ......................................................................................20

        E.  Gorss Lacks Prudential Standing Because Its Claims Fall Outside the TCPA's Zone-Of-Interest ....................................................................................................25

    II.  LANDS' END IS ENTITLED TO SUMMARY JUDGEMENT ON GORSS'S CLAIM FOR TREBLE DAMAGES ........................................................................................28

    III.  GORSS'S CLAIM FOR VIOLATIONS OF THE CONNECTICUT JUNK FAX STATUTE ALSO FAILS AS A MATTER OF LAW ....................................................30

CONCLUSION .........................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A Custom Hearing & Air Conditioning v. Kabbage, Inc.*,
    No. 16 C 2513, 2018 WL 488257 (N.D. Ill. Jan. 18, 2018) ...................................................18

*Allen v. Wright*,
    468 U.S. 737 (1984) ...........................................................................................................21

*ARcare v. Qiagen N. Am. Holdings, Inc.*,
    No. 16-7638, 2017 WL 449173 (C.D. Cal. Jan. 19, 2017) ...................................................24

*Bais Yaakov of Spring Valley v. FCC*,
    852 F.3d 1078 (D.C. Cir. 2017) ..........................................................................................

*CE Design, Ltd. v. Speedway Crane, LLC*,
    2015 IL App (1st) 132572 (Ill. App. June 18, 2015) ............................................................13

*Cellco P'ship v. Wilcret Health Care Mgmt.*,
    No. 09-3534-MLC, 2012 WL 1638056 (D. N.J. May 8, 2012) .............................................27

*Elk Grove Unified Sch. Dist. v. Newdow*,
    542 U.S. 1 (2004) ...............................................................................................................25

*F.C.C. v. ITT World Communications, Inc.*,
    466 U.S. 463 (1984) ...........................................................................................................17

*Gorss Motels, Inc. v. AT&T Mobility LLC*,
    No. 3:17-cv-00403-JBA, 2019 WL 625699 (D. Conn. Feb. 14, 2019) .................................19

*Gorss Motels, Inc. v. Cetis, Inc., et al.*,
    No. 3:16-CV-1368 (RNC) (D. Conn. June 18, 2018), Dkt. No. 112 .....................................26

*Gorss Motels, Inc. v. Otis Elevator Company*,
    No. 3:16-cv-1781-KAD, 2019 WL 1490102 (D. Conn. Apr. 4, 2019) ..................................19

*Gorss Motels, Inc. v. Safemark Sys., LP*,
    No. 16-1638 (M.D. Fla. Nov. 15, 2018) ...........................................................................3, 11

*Gorss Motels, Inc. v. Safemark Sys., LP*,
    18-15232 *consolidated with* 18-12511 (11th Cir.) ...............................................................13

*Gorss Motels, Inc. v. The Eric Ryan Corporation*,
    No. 3:17-cv-00126-DJS (D. Conn. Mar. 28, 2019) .............................................................19

*Harris v. World Fin. Newtork Nat'l. Bank*,
   867 F. Supp. 2d 888 (E.D. Mich. 2012) ...............................................................30

*Haysbert v. Navient Solutions, Inc.*,
   No. CV 15-144 PSG, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016) .........................29

*Jackson v. Abendroth & Russell, P.C.*,
   207 F. Supp. 3d 945 (S.D. Iowa 2016) .................................................................23

*King v. Time Warner Cable Inc.*,
   894 F.3d 473 (2d Cir. 2018) .................................................................................19

*La. Pub. Serv. Comm'n v. FCC*,
   476 U.S. 355 (1986) .............................................................................................17

*Lary v. Trinity Physiical Fin. & Ins. Servs.*,
   780 F.3d 1101 (11th Cir. 2015) ...........................................................................29

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................21

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*,
   Report and Order and Third Order on Reconsideration, 21 F.C.C. Rcd. 3787
   (April 6, 2006) ......................................................................................................16

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*,
   Order, 29 FCC Rcd. 13998 (2014) .......................................................................16

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*
   Order, 84 Fed. Reg. 10266 (Mar. 20, 2019) ........................................................20

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
   863 F.3d 460, 467 (6th Cir. 2017) ........................................................................18

*Selby v. Ocwen Loan Servicing*,
   No. 3:17-CV-0973-CAB-BLM, 2017 WL 5495095 (S.D. Cal. Nov. 16, 2017) ...................23

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .........................................................................................21

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.*,
   899 F.3d 500 (8th Cir. 2018) ................................................................................23

*Stoops v. Wells Fargo Bank N.A.*,
    197 F. Supp. 3d 782 (W.D. Penn. 2016) ...........................................................................25,26

*Tel. Sci. Corp. v. Asset Recovery Solutions, LLC*,
    No. 15-CV-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) ............................................27

*Thompson v. County of Franklin*,
    15 F.3d 245 (2d Cir. 1994) ................................................................................................25

*Travel 100 Grp. Inc. v. Mediterranean Shipping Co.*,
    383 Ill. App. 3d 149 (1st Dist. 2008) ................................................................. 3, 13, 15-16

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) ............................................................................................18

**Statutes**

28 U.S.C. §§ 2112, 2342 ........................................................................................... 17-19

Connecticut Junk Fax Act, Conn. Gen. Stat. Ann. § 52-570c ............................................1, 10, 30

Junk Fax Protection Act of 2005, 47 U.S.C. § 227 ............................................... *passim*

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ........................................... *passim*

## INTRODUCTION

As a franchisee of Wyndham Hotel Group ("Wyndham"), Gorss Motels, Inc. ("Gorss")

agreed to participate in Wyndham's "Approved Supplier Program" by which Wyndham made

franchisees aware of goods and services that met Wyndham standards.  As part of that program,

over the course of many years, Wyndham (through a subsidiary) sent many faxes to Gorss, three

of which referenced clothing offered by Lands' End, Inc. ("Lands' End").  Gorss asserts that

those three faxes violate the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended

by the Junk Fax Protection Act of 2005, 47 U.S.C. § 227, *et seq*., and the Connecticut Junk Fax

Act, Conn. Gen. Stat. § 52-570c.  However, as explained below, the statutes invoked by Gorss do

not apply to solicited faxes or to welcoming recipients, such as Gorss.

Gorss began receiving faxes from Wyndham in 2011, three years before Lands' End

became an "Approved Supplier" and four years before Lands' End was featured in any faxes sent

by Wyndham.  Most of the faxes included opt-out language, the Wyndham Hotel Group logo and

Wyndham disclaimers, making it clear that the faxes were sent by Wyndham as part of the

Approved Supplier Program.  But Gorss never asked Wyndham or any Approved Supplier to be

excluded from the fax program.  Instead, Gorss collected the Wyndham faxes (and thousands of

faxes from other companies, many of which included opt out language in full compliance with

the TCPA) and routinely sent them to its class action counsel at Anderson + Wanca.  After

collecting as many faxes as it could and selling its Super 8 Motel in August 2016, Gorss became

a professional class action plaintiff, filing over twenty (20) TCPA class actions against Approved

Suppliers, but never once suing Wyndham, the entity which actually caused the faxes to be sent.[1]

---

[1] The cases filed by Gorss (and their current status) include at least the following:  *Gorss Motels, Inc. v. AT & T Mobility LLC*, D. Conn. Civil No. 3:17cv403 (JBA), (class cert denied; plaintiff's unopposed motion to stay pending appeal granted); *Gorss Motels, Inc. v. Am. Tex-Chem Corp*, D. Conn. No. 3:17cv485 (DJS), (class cert denied; defendant's motion for summary judgment pending);  *Gorss Motels, Inc. et al. v. American Hotel Register*

Initially, Gorss complained that the Wyndham faxes violated the TCPA because they did not include sufficient opt out language.  No doubt with an eye on class certification, Gorss argued that specific opt out language was required even for solicited faxes and thus, Gorss hoped, there would be no need for a court to conduct an individualized determination about consent that would make class certification inappropriate.  But after this case was filed, the so-called Solicited Fax Rule that Gorss relied upon was invalidated.  And now, Gorss seems to argue that the faxes violated the TCPA regardless of the opt out language because they were not solicited.  See Plaintiff's Reply in Support of Motion for Class Certification (Dkt. No. 92) at 1 (arguing that "Rule 23 motion "is not premised on the 'Solicited Fax Rule'".)

No matter what the theory, the claims fail as a matter of law for several reasons.

First, the TCPA (like its Connecticut analog) applies only to unsolicited faxes, but the faxes at issue in this case were invited. Throughout its time as a Wyndham franchisee, Gorss repeatedly provided its fax number to Wyndham and gave Wyndham permission to send the

---

*Company*, N.D. Ill. No. 1:17-cv-01011 (SMF), (motion to deny class certification and motion to dismiss pending); *Gorss Motels, Inc. v. A.V.M. Enterprises, Inc.*, D. Conn. No. 3:17-CV-1078 (VAB), (motion for class certification pending); *Gorss Motels, Inc. v. Sysco Guest Supply, LLC*, D. Conn. No. 3:16-cv-01911-VLB, (class certification denied; case reported settled); *Gorss Motels, Inc. v. Safemark Sys., LP*, 18-15232 *consolidated with* 18-12511 (11th Cir.) (appeals of trial court orders denying class certification and granting defendant's motion for summary judgment consolidated; oral argument held on June 11, 2019); *Gorss Motels, Inc. v. Cetis, Inc.*, D. Conn. No. 3:16cv1368 (RNC), (voluntarily dismissed); *Gorss Motels Inc. v. G.S. Wilcox & Co.*, D. Conn. No. 3:16cv349 (SRU), (class cert. denied; case reported settled);  *Gorss Motels Inc. v. Commercial Lighting Industries, Inc.*, D. Conn No. 3:16cv1362 (MPS), (dismissed); *Gorss Motels Inc. v. Otis Elevator Co.*, D. Conn No. 3:16cv1781 (KAD), (class cert. denied; summary judgment pending in trial court; appeal of class certification denial pending in Second Circuit); *Gorss Motels Inc. v. Magnuson Hotels Int'l*, D. Conn. No. 3:16cv1832 (JAM), (dismissed); *Gorss Motels, Inc. v. Schneider Publishing Co. Inc.*, D. Conn No. 3:16 cv1833 (JBA), (dismissed); *Gorss Motels Inc. v. Land's End, Inc.*, D. Conn. No. 3:17cv10 (WWE), (ruling on class cert. forthcoming); *Gorss Motels Inc. v. Eric Ryan Corp.*, D. Conn. No. 3:17cv126 (DJS), (cert denied; motion to dismiss found moot); *Gorss Motels, Inc. v. Sunbeam Consumer Prod.*, D. Conn. No. 3:17-CV-0969 (VLB) (motion to dismiss found as moot per communication that the case has settled; no stipulation of dismissal has been filed.); *Gorss Motels, Inc. v. Renue Systems Development Copr., Inc, D*. N. Ill. No. 1:16-cv-10975 (RAG) (case dismissed.); *Gorss Motels, Inc v. Free Rx Saver, Inc.*, S. D. Fla. 0:17-cv-60731 (KAM) (case dismissed per joint stipulation of dismissal.); *Gorss Motels, Inc. v. Illen Products Ltd*, D. Conn. 3:18-cv-01052 (AVC) (motion to certify class denied without prejudice to its being re-filed, if necessary, after the resolution of the pending motions for judgment on the pleadings and to dismiss.); *Gorss Motels, Inc. v. Sprint Communications Company, L.P.*, D. Conn. No: 3:17-cv-00546-JAM (class cert denied without prejudice to re-filing; defendant's motion for summary judgement still pending.); *Gorss Motels, Inc. v. Williams & Williams Marketing Services, Inc. et al*, D. Conn No. 3:17-cv-00399-JAM (voluntarily dismissed.); *Gorss Motels Inc. v. Brigadoon Fitness Inc.*, N.D. Indiana, No. 1:16-cv-00330-TLS-SLC (class certification denied).

faxes at issue in this case (not to mention the faxes at issue in the other twenty-plus class actions Gorss has filed). Indeed, in one of Gorss's other class actions against a different Approved Supplier, the court held that Gorss's claims fail as a matter of law because Gorss's participation in the Approved Supplier Program constituted consent. *Gorss Motels, Inc. v. Safemark Sys., LP*, No. 16-1638 (M.D. Fla. Nov. 15, 2018), *appeal pending*, 18-15232 (11th Cir.) ("Gorss [Motels] agreed that it could be contacted by [Wyndham] affiliates in regard to purchasing items for its hotels."). And in other TCPA cases such as this, where a plaintiff provides its fax information to one entity with the expectation that it will be provided to and used by another, courts have not hesitated to find express permission. *See e.g.*, *Travel 100 Grp. Inc. v. Mediterranean Shipping Co.*, 383 Ill. App. 3d 149, 158-59 (1st Dist. 2008) (third party had permission to send fax advertisements where plaintiff's fax number was provided to an industry network of which it was a member, even though it was not provided to the industry supplier who actually sent the fax).

If Gorss returns to its original claim – that consent is irrelevant because the "Solicited Fax Rule" requires particular opt out language on all faxes -- the claim should be dismissed for the reasons explained by the D.C. Circuit in *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017) (invalidating the Solicited Fax Rule; and holding that opt out language need not appear on solicited faxes).

Second, Gorss lacks standing to pursue TCPA claims against Lands' End. Article III standing requires a causal relationship between alleged TCPA violations and alleged TCPA damages (loss of paper, toner, ink and time). But in this case, Gorss freely admits that it did not even read the opt-out language in any of the faxes it received because it would not have taken the minute or two required to inform Wyndham that Gorss wished not to receive further faxes. That is, Gorss wanted the faxes that it now complains about.

The evidence also establishes as a matter of law that Gorss lacks prudential standing because it falls outside the zone of interest of the TCPA's protections. The TCPA was never intended to protect a professional plaintiff who could have stopped receiving the faxes, but instead chose to collect faxes for years for the express purpose of manufacturing lawsuits against Approved Suppliers.

Third, if for some reason any part of Gorss's TCPA claim survives, this Court should at the very least grant summary judgment on Gorss's claim for treble damages, which are only available where the sender of a fax "willfully or knowingly" violates the TCPA.  There can be no dispute that Wyndham had final authority to approve the faxes and provided to Lands' End the disclaimer and opt-out language.  And of course, it was Wyndham, through a subsidiary and vendor that sent the faxes using the services of another third-party (WestFax, Inc.).  Moreover, Lands' End participated in the fax program based on Wyndham's advice that it was an effective means of communicating with its franchisees, which agreed to receive the faxes.  Based on this record, any claim for treble damages fails as a matter of law.

Finally, Lands' End cannot be held liable under the Connecticut Junk Fax Act for all the same reasons that it cannot be liable under the TCPA *and* for the additional reason that Lands' End did not actually send the faxes (unlike the TCPA, the Connecticut Junk Fax Act does not provide for liability against the person or entity whose goods or services are referenced in a fax sent by a third party).

## UNDISPUTED FACTS

### A.      Gorss agrees to abide by Wyndham's System Standards.

In 1988, Gorss entered into an agreement (the "1988 Franchise Agreement") to open a Super 8 Motel in Cromwell, Connecticut.  Statement of Undisputed Material Facts ("SUF"), ¶ 2.

4

As a condition of opening its Super 8 franchise, Gorss agreed to comply with Wyndham's "System Standards," including "to abide by the rules of operation, however denominated, as from time to time adopted by FRANCHISOR, and to furnish motel accommodations, services and conveniences of the same high quality and distinguishing characteristics as provided at Super 8 Motels in and around the United States [and] agree[d] to operate its motel at all times in strict compliance with the System . . . ." *Id.* at ¶¶ 4-5.  Under the "System Quality" section of the 1988 Franchise Agreement, Gorss further agreed "to purchase from FRANCHISOR, or from such other vendor as FRANCHISOR may approve from time to time, or from any other source whose supplies and equipment have been approved in writing by FRANCHISOR."  *Id.* at ¶ 6.

After extending the term of the 1988 Franchise Agreement, *see* SUF, ¶ 7, Gorss submitted to Wyndham an application to continue its Super 8 franchise.  *Id.* at ¶ 10.  Prior to executing a new franchise agreement, Wyndham provided a Franchise Disclosure Document (the "FDD"), which disclosed to Gorss, among other things:

- that Wyndham's affiliate, Worldwide Sourcing Solutions, Inc. ("WSSI") would be offering "goods and services to [Wyndham's] franchisees and the franchisees of the [Lodging Affiliates]";

- that, as a Wyndham franchisee, Gorss must "design the Facility to meet minimum standards" and that Wyndham had established "Approved Suppliers" to assist franchisees in meeting minimum standards;

- that Gorss was required to purchase equipment that meets Super 8 standards and purchase "mark-bearing items" only from "suppliers for these products included in WSSI's Approved Supplier program.";

- that Wyndham, either itself or through WSSI, negotiates discounts on products sold by Approved Suppliers for the benefit of its franchisees; and

- that Wyndham would "furnish . . . information about Approved Suppliers whose products have been approved for usage . . . ."

SUF, ¶¶ 17-24.

On September 10, 2014, Gorss entered into a second franchise agreement with Wyndham (the "2014 Franchise Agreement") for the continued operation of the Cromwell Super 8 for an additional term of twenty years.  *Id*. at ¶ 11.  The 2014 Franchise Agreement provided Gorss further detail about the Approved Supplier Program and Gorss's obligations to satisfy Wyndham's "System Standards."  *Id*. at ¶ 14.  Consistent with the FDD, the 2014 Franchise Agreement specifically required Gorss to obtain mark-bearing items only from Wyndham-approved suppliers.  *Id*. at ¶ 15; *see also* Fenimore Decl., Ex. G at § 3.10 ("You will purchase or obtain certain items we designate as proprietary or that bear or depict the Marks . . . only from suppliers we approve."); *id*. at § 4.4 ("We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts.  We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items . . . .").  By signing the 2014 Franchise Agreement, Gorss indicated that it understood that it would be provided advertisements regarding Approved Suppliers.  Ex. 2, Gorss Tr. (Safemark Action) at 59:5-22 (Gorss's president and 30(b)(6) representative admits that, by signing the 2014 Franchise Agreement, he agreed to receive advertisements regarding Approved Suppliers and that Wyndham could provide advertisements "any time they wanted. . . .").[2]

Section 3.1 of the 2014 Franchise Agreement required Gorss to make certain renovations to its property in accordance with a Property Improvement Plan Report (the "PIP"), which was attached to the 2014 Franchise Agreement.  SUF, ¶ 26.  On August 26, 2014, Gorss signed the PIP, acknowledging and agreeing that Approved Suppliers of Wyndham would be provided with his contact information in order to contact Gorss regarding products and services related to his obligations under the PIP.  *Id*. at ¶ 27.

---

[2] All references to numbered exhibits are to those attached to the Declaration of Adam R. Doherty filed herewith.

**B.**    **Gorss receives faxes from Wyndham for years and instead of opting out, sends them to Anderson + Wanca.**

Lands' End did not become an Approved Supplier until October 2014 and, as explained in more depth below, Wyndham did not send Gorss a fax referencing Lands' End until January 12, 2015.  SUF, ¶¶ 68, 70, 82.  By that time, Gorss had been collecting and providing copies of faxes it received to class action counsel at Anderson + Wanca for at least four years.  *Id*. at ¶¶ 54, 57-58.  Over the years, Gorss turned over at least 2,100 faxes to Anderson + Wanca, including many faxes from Wyndham concerning other Approved Suppliers, which included opt-out language identical or substantially similar to the opt out language in two of the three faxes at issue here, providing the same email address and toll free telephone number to opt out.  SUF, ¶ 67. Despite receiving more than 50 faxes referencing Wyndham and providing some form of opt-out language prior to receiving the January 12, 2015 fax referencing Lands' End, Gorss never opted out of receiving the faxes from Wyndham, despite the fact that he admits it would have taken a matter of minutes to opt out and that, if he had, he would have stopped receiving the faxes.  SUF, ¶¶ 66-67.  Instead, Gorss was happy to save the faxes and provide them to his class action counsel, who never discussed with Gorss the option of using the email address or toll free telephone number to opt out of receiving faxes from Wyndham, but later filed more than twenty class actions on Gorss's behalf.  *Id*. at ¶¶ 56-65, 96.

**C.**    **Gorss provides its fax number to Wyndham and never objects to receiving Wyndham-approved supplier faxes.**

Throughout its time as a Wyndham franchisee, Gorss repeatedly provided its fax number to Wyndham.  On January 21, 2010, Gorss provided its fax number to Wyndham on a contact form Wyndham requested it complete.  SUF, ¶ 46.  After Gorss engaged Anderson + Wanca and began to receive faxes from Wyndham, Gorss continued to provide its fax number to Wyndham.

In 2012, Gorss provided his fax number to Wyndham as part of the registration process for

Wyndham conferences.  *Id*. at ¶ 43.  On the franchise renewal application Gorss submitted to

Wyndham on July 22, 2014, Gorss provided its fax number in three different places and once

again provided its fax number in the 2014 Franchise Agreement.  *Id*. at ¶¶ 47-48.  On November

24, 2015, several months after receiving the January 12 and June 15, 2015 faxes at issue in this

case, Gorss included its fax number on a contact form, sending it back to Wyndham via fax.  *Id*.

at ¶ 51.

Despite the fact that it had been receiving faxes from Wyndham for several years, Gorss

never opted out or otherwise complained to Wyndham about receiving the faxes.  SUF, ¶ 56.

**D.    Lands' End becomes an Approved Supplier and Wyndham sends three faxes
referencing Lands' End.**

On October 28, 2014, Lands' End and WSSI entered into a Worldwide Sourcing

Agreement, pursuant to which Lands' End became an Approved Supplier and agreed to provide

products to Wyndham franchisees at discounted prices and to pay commissions to Wyndham on

any sales to franchisees.  SUF, ¶¶ 68-70.  The agreement also required Lands' End to participate

in Wyndham's marketing program, which included a fax program that Wyndham advised Lands'

End was one of the most effective channels of communication to its franchisees.  *Id*. at ¶¶ 72-73.

Based on that advice, Lands' End participated in the fax program on three occasions – January

12, 2015, June 15, 2015 and May 16, 2016.  On each occasion, Lands' End provided a draft fax

flyer to Wyndham.  Wyndham then revised the faxes and provided Wyndham disclaimer and/or

opt out language to be included on the fax.  Wyndham had final approval of all fax broadcasts.

After approving the faxes, Wyndham sent the faxes to its fax vendor, Western Printing, with

instructions for each broadcast and Western Printing utilized the service of WestFax, Inc. to

conduct the fax broadcast.  SUF, ¶¶ 74-89.

In discovery, Gorss produced copies of the January 12, 2015 and June 15, 2015 faxes with fax header information identifying Gorss as the recipient of the fax, but Gorss has not produced a copy of the May 16, 2016 fax. *Id*. at ¶¶ 82, 86, 89. The January 12, 2015 and May 16, 2016 faxes include the following Wyndham disclaimer and opt-out language:

> All products and services are manufactured and/or provided by Lands' End and not by Wyndham Worldwide Corporation (WWC) or its affiliates. Neither WWC nor its affiliates are responsible for the accuracy or completeness of any statements made in this advertisement, the content of this advertisement (including the text, representations and illustrations) or any material on a website to which the advertisement provides a link or a reference. Please refer to the applicable brand solicitation for your property prior to purchasing products.

> This facsimile contains confidential information intended only for use by Wyndham Worldwide entities and Wyndham Hotel Group franchisees. If the reader of this facsimile is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile by error, please immediately notify us by emailing strategicsourcing@wyn.com. To opt out from future faxes, email strategicsourcing@wyn.com or call this toll-free number (877) 764-4212.

*See* Ex. 3, Statement of Stipulated Undisputed Facts at Exs. 1 and 3.

**E.      Gorss sells its hotel and files more than twenty TCPA class action lawsuits against Approved Suppliers.**

On May 24, 2016, Gorss entered into a "Purchase and Sale Agreement" to sell the Cromwell Super 8 Motel, which included transfer of the "premises and business." SUF, ¶ 90. The sale closed on August 9, 2016 and, as part of the transaction, Gorss transferred ownership of its fax machine and fax line to the buyers. *Id*. at ¶ 92.

After selling the Super 8, Gorss maintained its corporate form for the sole purpose of filing TCPA class action lawsuits. *Id*. at ¶ 95. To date, Gorss has filed more than twenty such suits, all of which allege TCPA violations by Approved Suppliers based on faxes Gorss received

3231168

from Wyndham.  *Id*. at ¶ 96.  Gorss has not named Wyndham as a defendant in a single case.  *Id*. at ¶ 97.

## **GORSS'S CLAIMS**

Gorss's Amended Complaint includes a single claim for relief under the TCPA, alleging that Lands' End violated the TCPA by failing to include proper opt-out notices in the January 12, 2015 and June 15, 2015 faxes and other unidentified fax transmissions (Gorss claims to have received a third fax – the May 16, 2016 fax – but has never produced a copy evidencing its receipt of the fax).  *See* Doc. No. 49, Am. Compl., ¶¶ 27-36.  However, in connection with its class certification brief, Gorss argued that its Rule 23 petition, if not its whole case, "does not rely on the [allegedly] non-compliant opt-out notice in the [f]axes." Plaintiff's Reply In Support of Motion for Class Certification (Dkt. No. 92) at 1.

Gorss seeks to recover statutory damages of $500 for each violation and requests that the court treble them on the basis that Lands' End's alleged violations were "willful and knowing." *Id*., Prayer for Relief.  The Amended Complaint also includes a claim under the Connecticut Junk Fax Statute, Conn. Gen. Stat. § 52-570c, pursuant to which Gorss seeks $500 per violation, together with costs and attorneys' fees.  *Id*. at ¶¶ 37-40.

## **ARGUMENT**

## I.    **SUMMARY JUDGMENT SHOULD ENTER ON THE TCPA CLAIMS.**

The TCPA prohibits the sending of an unsolicited fax advertisement to a telephone facsimile machine.  47 U.S.C. § 227(b)(1)(C).  The TCPA defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior express invitation or permission."  47 U.S.C. § 227(a)(4).  The TCPA provides for monetary damages to the recipient

of an unsolicited fax in the amount of the recipient's actual monetary loss or $500, whichever is greater.  47 U.S.C. § 227(b)(3)(B).

Gorss's TCPA claim fails as a matter of law because: (a) the three faxes referencing Lands' End were solicited;[3] and (b) Gorss lacks standing to pursue a TCPA claim because there is no causal relationship between the faxes and any claimed damages and because, by collecting the faxes for the purpose of manufacturing lawsuits, Gorss has placed himself outside the zone of interests of the TCPA.

### A.    The TCPA Does Not Apply to Faxes Such as These That Were Solicited.

Gorss's TCPA claim fails as a matter of law because Gorss gave Wyndham permission to send it fax advertisements concerning goods and services offered by Approved Suppliers, including Lands' End.  Indeed, summary judgment has already been awarded against Gorss on this exact issue in one of its other Approved Supplier class actions, which involved the exact same factual and legal issues before the Court in this case.

In *Gorss Motels, Inc. v. Safemark Sys., L.P.*, No. 16-1638 (M.D. Fla. Nov. 15, 2018), *appeal pending*, 18-15232 (11th Cir.),[4] Gorss sued another Approved Supplier, Safemark Systems ("Safemark"), based on two faxes Safemark sent to Gorss using a franchisee database provided by Wyndham in advance of a 2013 Wyndham Conference, including Gorss's fax number, which it had provided to Wyndham in advance of the Wyndham conference the year before.  *Id*. at 3.  The Safemark court relied on Gorss's provision of its fax number to Wyndham on that occasion and on other occasions, including in the contact form Gorss submitted in 2010,

---

[3] Gorss has not produced a copy of the May 16, 2016 fax or any other evidence that he actually received that fax.  SUF, ¶ 89.  Gorss relies on evidence from Westfax that the fax was sent to a Gorss number.  For purposes of its Motion for Summary Judgment, Lands' End is not challenging Gorss's receipt of that fax; however, should this case proceed to trial, Gorss will bear the burden to establish that it actually received the May 16, 2016 fax.

[4] A copy of the *Safemark* decision is attached to the Doherty Decl. as Exhibit 18.

*id*. at 4; *see also* SUF, ¶¶ 45-53 (identifying other occasions when Gorss provided its fax number to Wyndham), and Gorss's agreement to participate in the Approved Supplier program to find that the faxes sent by Safemark were solicited.  Specifically, the court cited Section 4.4 of the 2014 Franchise Agreement, which states:

> We may offer optional assistance to you with purchasing items used at or in the Facility.  <u>Our affiliates may offer this service on our behalf.</u>  We may restrict vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts.  We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

*Id*. at 4 (emphasis in *Safemark* decision); *see also* SUF, ¶ 15.  Based on that language and the Rule 30(b)(6) testimony of Gorss's representative and president, Steven Gorss, that he understood that, by signing the 2014 Franchise Agreement he had given permission for affiliates to "send me advertising any time they wanted," the court found as follows:

> Gorss [Motels] agreed that it could be contacted by [Wyndham] affiliates in regard to purchasing items for its hotel.  This permission, along with the provision of its fax number to [Wyndham], precludes Gorss [Motels] from arguing that the faxes it received from [defendant] pursuant to the Approved Supplier program were unsolicited.

*Id*. at 5; *see also* SUF, ¶ 16.

This Court should grant Lands' End's Motion for Summary Judgment for the same reasons.  The only difference between the facts of this case and the facts of *Safemark* is that, unlike the Approved Supplier in that case, Lands' End didn't even send the faxes; Wyndham sent them as part of its Approved Supplier fax program.  SUF, ¶¶ 77-85.  All other legal and factual issues in *Safemark* are identical to the legal and factual issues here and there is no reason why this Court should not follow the Middle District of Florida's well-reasoned decision.[5]

---

[5] Gorss's appeals of the trial court's orders denying class certification and granting Safemark's motion for summary judgment are currently pending in the United State Court of Appeals for the Eleventh Circuit.  *See Gorss Motels, Inc. v. Safemark Sys., LP*, 18-15232 *consolidated with* 18-12511 (11th Cir.) (oral argument held on June 11, 2019).

3231168

In addition, other courts have reached similar conclusions in cases where express permission was granted to a third party, not directly to the company whose products were advertised in the fax. *See Travel 100 Grp. Inc. v. Mediterranean Shipping Co.*, 383 Ill. App. 3d 149, 158-59 (1st Dist. 2008) (third party had permission to send fax advertisements where plaintiff's fax number was provided to an industry network of which it was a member, even though it was not provided to the industry supplier who actually sent the fax); *see also CE Design, Ltd. v. Speedway Crane, LLC*, 2015 IL App (1st) 132572, at *57-64 (Ill. App. June 18, 2015) (court found consent to receive fax advertisements where plaintiff submitted information to "Blue Book," a regional commercial construction directory of businesses, even though the contract "did not include any specific terms or conditions regarding faxed communications from other members" and defendant, a member of Blue Book, sent a fax directly to plaintiff).

In *Travel 100*, the plaintiff, an operator of travel agencies, became a member of an industry network, International Airlines Travel Agent Network ("IATAN"), which maintained a database of its members' contact information. *Travel 100*, 383 Ill. App. 3d at 157. Throughout the years that plaintiff was a member of IATAN, it agreed to have its contact information included in the IATAN database, repeatedly confirmed its contact information when requested by IATAN, including its fax number, and authorized IATAN "to release [its contact information] to any industry supplier that may wish to use the applicant's services." *Id*. at 157. The Appellate Court of Illinois concluded that, although the plaintiff had not provided permission directly to the defendant (an industry travel supplier), by providing its contact information to IATAN with the knowledge that the information may be used by industry suppliers, plaintiff had provided express permission or invitation for advertisements to be sent by those suppliers, including the defendant.

---

If the Eleventh Circuit affirms the trial court's holding that Gorss agreed to receive faxes from or about Wyndham Approved Suppliers, Gorss will be collaterally estopped from arguing that he did not so consent in this case and, if the case is not already dismissed, Lands' End will file an appropriate motion at that time.

*Id.* at 159 ("by submitting its information [to IATAN], Travel 100 indicated its express agreement to receive marketing materials from suppliers of travel services.").

The evidence of Gorss's express permission in this case is similar to the evidence at issue in *Travel 100* and, in some ways, Gorss's consent is even more clear than the plaintiff's in *Travel 100*. Like the plaintiff in *Travel 100*, Gorss repeatedly provided its fax number to Wyndham with, as the *Safemark* court found, full knowledge that it would receive information from Wyndham concerning Wyndham approved suppliers and that Wyndham would communicate with Gorss via fax. Ex. 1, Gorss Tr. at 54:13-55:3; Ex. 2, Gorss Tr. (Safemark Action) at 59:5-22 (acknowledging that Wyndham could send fax advertisements whenever it wanted).

When Gorss became a Super 8 franchisee in 1988, it acknowledged that it had to abide by System Standards, SUF, ¶¶ 4-5, and agreed "to purchase [products] from FRANCHISOR, or from such other vendor as FRANCHISOR may approve from time to time . . . ." *Id.* at ¶ 6. Prior to signing the 2014 Franchise Agreement and before receiving a single fax referencing Lands' End, Wyndham, through the FDD, expressly disclosed to Gorss that it was required to purchase Mark-bearing products "only from suppliers for these products included in [the] Approved Supplier [P]rogram" and, most importantly, that Wyndham would "furnish . . . information about Approved Suppliers whose products have been approved for usage." SUF, ¶¶ 21, 24.

After receiving these disclosures, Gorss not only signed the 2014 Franchise Agreement, which included additional requirements concerning System Standards and Gorss's obligation to purchase Mark-bearing items only from Approved Suppliers, it provided its fax number in the 2014 Franchise Agreement, SUF, ¶ 48, and signed the PIP, by which Gorss acknowledged and agreed that its contact information would be provided to Approved Suppliers concerning offers to purchase their products and services. *Id.* at ¶ 27. Thus, like the plaintiff in *Travel 100*, which

provided its fax number to be included in the directory with knowledge that the information may be used by industry suppliers and thereby consented to receive faxes from those suppliers, Gorss consented to receive faxes concerning Approved Suppliers by repeatedly providing its fax number to Wyndham with full knowledge that Wyndham would provide information concerning Approved Suppliers and that the contact information may be shared with certain Approved Suppliers for the purpose of offering their goods and services.

The evidence of consent in this case is stronger than in *Travel 100*. Unlike the fax at issue in *Travel 100*, which was sent directly by a supplier, all the faxes at issue in this case were sent by Wyndham in its capacity as Gorss's franchisor and pursuant to the parties' agreement that Wyndham would provide information concerning Approved Suppliers.  Indeed, this is exactly the type of information Gorss should have and did expect to receive after signing the 2014 Franchise Agreement. SUF, ¶ 16.  Gorss's consent is further evidenced by its receipt of Approved Supplier faxes throughout the relevant time period and its continued willingness to provide its fax number, including after receiving the January 12, 2015 and June 15, 2015 faxes at issue in this case.  *See* SUF, ¶ 51 (Gorss provided its fax number to Wyndham again in November 2015 when it completed a contact sheet and returned it to Wyndham via fax).

Gorss must not be allowed to commercially benefit from its relationship with Wyndham and, specifically from its use of the Super 8 brand name, while simultaneously and improperly using that relationship to manufacture TCPA lawsuits against Approved Suppliers.  *See Travel 100*, 383 Ill.App.3d at 159 ("Travel 100 became a member of IATAN to improve its commercial contacts and success.  The wheels of commerce would become bogged down if each business had to obtain the kind of consent Travel 100 requires [separate consent from each member of the

network before sending faxes], and we will not impede the advances of modern technology and commerce.").[6]

For this reason, Gorss's TCPA claim fails as a matter of law and this Court should dismiss it in its entirety.

### B. Only Unsolicited Faxes Require Opt-Out Language.

When Gorss filed this case and the majority of its other class actions against the various Approved Suppliers, the state of the law concerning the need to include specific opt-out language on solicited faxes was unsettled.  In 2006, the FCC issued a regulation requiring that solicited faxes include the same opt-out language as the TCPA expressly requires for unsolicited faxes (the "Solicited Fax Rule").  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3811-12, ¶¶ 44-48 (April 6, 2006) (the "2006 Order").  However, after thirteen petitions were filed in various courts of appeal seeking review of the Solicited Fax Rule and a subsequent order interpreting and applying the Solicited Fax Rule,[7] the D.C. Circuit overturned the rule, finding that the FCC does not have the authority to require opt-out notices on solicited faxes.  *Bais Yaakov of Spring Valley v. Federal Communications Commission*, 852 F.3d 1078, 1083 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 1043 (2018).

In *Yaakov*, the court examined the text of the TCPA to determine whether it conferred upon the FCC authority to require businesses to include opt-out notices on solicited faxes.  *Id.* at

---

[6] When Gorss commenced this case, it originally based its claim on Lands' End's failure to include fully-compliant opt-out language in the faxes at issue.  However, in the wake of the *Yaakov* decision striking down the rule requiring that solicited faxes include the same opt-out language required in unsolicited faxes and, in an attempt to certify a class in this case after failing to do so in many of its other cases, Gorss has pivoted by arguing that permission cannot be inferred and, because permission was granted to Wyndham and not directly to Lands' End, the Lands' End faxes are unsolicited.  See Doc. No. 92, Plaintiff's Reply In Support of Motion for Class Certification at 4-6. For the reasons explained above and by the courts in *Travel 100*, that argument is a nonstarter.

[7] *See Order, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 29 FCC Rcd. 13998 (2014) (interpreting and applying the 2006 Solicited Fax Rule).

1079.  Based on the plain text of the TCPA, which is limited to a prohibition against "unsolicited advertisement[s]," *see* 47 U.S.C. § 227(b)(1)(C), and defines "unsolicited advertisement" to mean an advertisement "transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*," *id*. at 227(a)(5) (emphasis added), the court overturned the Solicited Fax Rule.  *Id*. at  1083 ("We hold that the FCC's 2006 Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes.").  The court reasoned that the FCC's attempt to require opt-out notices on solicited faxes was an attempt to "sidestep" the plain language of the TCPA, which limits the FCC's authority as an administrative agency. *Id*. at 1082-83 ("The text of the Act does not grant the FCC authority to require op-out notices on solicited faxes."); *see also La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) (the FCC "literally has no power to act . . . unless and until Congress confers power upon it.").

Gorss will attempt to avoid *Yaakov* by arguing that the D.C. Circuit's opinion is not binding on this Court, but any such argument is without merit.  In rendering its decision, the D.C. Circuit acted as the reviewing court under the Hobbs Act, which grants the courts of appeal with exclusive jurisdiction to determine the validity of FCC orders.  28 U.S.C. § 2342 ("The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (1) all final orders of the Federal Communication Commission . . . .").[8] After thirteen petitions challenging the Solicited Fax Rule had been filed in various courts of appeal, the Multidistrict Litigation Panel assigned the petitions to the D.C. Circuit pursuant to 28 U.S.C. § 2112,[9] making that court the sole forum for addressing the validity of the Solicited Fax

---

[8] To challenge an FCC order, one must first petition the FCC and, if the petition is denied, the petitioner must then appeal to the court of appeals.  *See F.C.C. v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984) (explaining the proper procedure for seeking review of the denial of a petition to the FCC).

[9] When multiple petitions for review of the same FCC order are received, 28 U.S.C. § 2112(a)(3) requires that the FCC advise the judicial panel on multidistrict litigation and that the Multidistrict Litigation Panel consolidate the petitions for review in one of the courts of appeal in which a petition is pending.

3231168

Rule and making its decision in *Yaakov* binding on this court. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017), as corrected on denial of reh'g en banc (Sept. 1, 2017), *cert. denied*, 138 S. Ct. 1284 (2018) ("Once the Multidistrict Litigation Panel assigned petitions changing the Solicited Fax Rule to the D.C. Circuit, that court became the sole forum for addressing the validity of the FCC's rule . . . [a]nd consequently, its decision striking down the Solicited Fax Rule became binding outside of the D.C. Circuit.") (internal quotations and citations omitted); *see also True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929-930 (9th Cir. 2018) (agreeing with *Sandusky* court that the *Yaakov* decision is binding on other circuits); *A Custom Hearing & Air Conditioning v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at *3 (N.D. Ill. Jan. 18, 2018) ("The Yaakov court ruled on thirteen consolidated petitions for review of an FCC decision concerning the Solicited Fax Rule from multiple courts of appeals, a consolidation which transformed the D.C. Circuit into the sole forum for addressing . . . the validity of the FCC's rule.") (internal quotations and citations omitted).[10]

The Second Circuit agrees with the courts in *Sandusky, True Health* and *Kabbage*. In a case concerning challenge to a different FCC order, the court, like the courts in those cases, held that when FCC regulations are challenged in more than one court of appeals, 28 U.S.C. § 2112 requires that the Multidistrict Litigation Panel consolidate the petitions and assign them to a single circuit, which becomes "the sole forum for addressing . . . the validity of the FCC's order." *King v. Time Warner Cable Inc.*, 894 F.3d 473, 476 n.3 (2d Cir. 2018).

---

[10] Gorss likely will argue that the Solicited Fax Rule still applies because the court in *Yaakov* only overturned the 2014 Order, which refused to repeal the Solicited Fax Rule. After the plaintiffs in *Sandusky* and *True Health* made the same arguments, the courts in both cases rejected it, finding that, although the order appealed to the D.C. Circuit was the 2014 Order, that order was wholly dependent on the 2006 Solicited Fax Rule, and the *Yaakov* court "squarely held that the underlying Solicited Fax Rule was invalid." *True Health*, 896 F.3d at 930; *Sandusky*, 863 F.3d at 467-68 (finding that, in *Yaakov*, "it was the Solicited Fax Rule itself that was struck down . . . .").

For this reason, in three of Gorss's other cases pending in this Court, Judges Arterton, Dooley, and Squatrito have already ruled that *Yaakov* is binding on this Court and relied on the decision to deny Gorss's motion for class certification.  *See Gorss Motels, Inc. v. AT&T Mobility LLC*, No. 3:17-cv-00403-JBA, 2019 WL 625699, at *6 (D. Conn. Feb. 14, 2019) ("In light of the position of the Second Circuit regarding the binding effect of consolidated appeals of FCC regulations, the text of the statute, the reasoning of the *Bais Yaakov* decision, and the position of other courts which have addressed this issue, the Court will similarly join those that have concluded that they are bound by the holding of *Bais Yaakov*."); *Gorss Motels, Inc. v. The Eric Ryan Corporation*, No. 3:17-cv-00126-DJS (D. Conn. Mar. 28, 2019) (citing Judge Arterton's decision in *AT&T* and stating: "[t]his court likewise concludes that it is bound by the decision of the D.C. Circuit in *Bais Yaakov*."); *Gorss Motels, Inc. v. Otis Elevator Company*, No. 3:16-cv-1781-KAD, 2019 WL 1490102 at * 4 (D. Conn. Apr. 4, 2019) ("under the *King* analysis, the D.C. Circuit's decision is binding on this Court.");

This Court should follow the Second Circuit's decision in *King* and the decisions in *AT&T*, *Eric Ryan* and *Otis* to hold that it is bound by the *Yaakov* decision that only unsolicited faxes need to include opt out language under the TCPA.

3231168

C.     **The FCC's Elimination of the Solicited Fax Rule As a Result of the *Yaakov* Decision Moots Gorss's Argument that the Solicited Fax Rule Applies In This Case.**

Lands' End anticipates that Gorss will argue that *Yaakov* is not controlling in this case because the decision did not expressly strike down the Solicited Fax Rule.  The FCC disagrees. On March 19, 2019, the FCC, via the Consumer and Governmental Affairs Bureau (the "Bureau"), amended its rules by eliminating the Solicited Fax Rule, explaining that it did so because "[the] rule was declared unlawful by the United State Courts of Appeals for the D.C. Circuit [in the *Yaakov* case]" and that the withdrawal of the rule was a direct response to the *Yaakov* decision.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Regarding the Commission's Opt-Out Notice Requirement for Faxes Sent With the Recipient's Prior Express Permission*, 84 Fed. Reg. 10266 (Mar. 20, 2019) ("This action is taken in response to the decision of the United States Court of Appeals for the D.C. Circuit finding that the rule is unlawful to the extent that it requires opt out notices on solicited faxes.").

The Bureau also made clear that, in light of the D.C. Circuit's "final and nonreviewable" order vacating the rule and declaring it unlawful, its withdrawal of the rule has retroactive effect. *Id*.  Specifically, the Bureau dismissed as moot ten pending petitions for retroactive waiver of the Solicited Fax Rule and two petitions for reconsideration of orders enforcing the rule.  *Id*. at 10267.  Accordingly, as a result of the *Yaakov* decision and the FCC's subsequent elimination of the rule, there can be no dispute that the Solicited Fax Rule has no application in this case and that, since Gorss consented to receive the faxes at issue, its claims fail as a matter of law.

D.     **Gorss Lacks Standing Because It Has No Evidence of Injury Caused by The Alleged TCPA Violations.**

Even if this Court were to find that the three faxes at issue were unsolicited (and they were not), Gorss's TCPA claims would still fail as a matter of law because Gorss cannot satisfy

its burden to establish Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

(1992) (Gorss bears burden to establish Article III standing).

To establish Article III standing, Gorss must prove that it has "(1) suffered an injury in

fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547.  In

a TCPA claim such as this, to satisfy this standard, Gorss must establish "a causal connection

between the [claimed] injury" and the defendant's alleged violation of the TCPA.  *Lujan*, 504

U.S. at 560-562.  The "line of causation" between the alleged conduct and injury must not be

"too attenuated," and "the prospect of obtaining relief from the injury" must not be "too

speculative."  *Allen v. Wright*, 468 U.S. 737, 752 (1984).

Gorss cannot satisfy this burden because it admits there is no connection between its

claimed injury – the loss of paper, toner, ink and time – and the alleged wrongful conduct by

Lands' End – the transmission of two faxes with an email address and toll free telephone number

to opt-out, but no notice that opt-out requests must be honored in 30 days (the January 12, 2015

and May 16, 2016 faxes) and one in which Wyndham did not include opt-out language (the June

15, 2015 fax).  *See* SUF, ¶¶ 82, 84.  This is because Gorss's representative and president, Steven

Gorss, has repeatedly conceded that he didn't read opt-out notices and that, even if he had, he

would have simply continued to forward the faxes to his attorneys at Anderson + Wanca and

would not have opted out of any faxes.  SUF, ¶¶ 61-66.  Mr. Gorss has made the following

admissions:

- **That he never read opt out language or attempted to opt-out of receiving any faxes**, Ex. 1, Gorss Tr. at 73:15-17; 77:6-7;

- **That, even if faxes had included fully compliant opt-out language (i.e. an email address, toll free telephone number and notice that opt out requests must be honored within 30 days), he would not have used it**, Ex. 6, Gorss Tr. (Cetis Action)

at 155:21-158:11; Ex. 7, Gorss Tr. (Otis Action) at 75:2-16; Ex. 4, Gorss Tr. (Sprint Action) at 150:1-151:5; and

- **That he never complained to Wyndham about the faxes or made any attempt to stop Wyndham from sending the Approved Supplier faxes**, Ex. 1, Gorss Tr. at 73:15-17; 87:16-88:5.

These admissions, particularly the admission that Gorss would not have opted out even if the faxes included fully-compliant opt-out language, destroy its TCPA claims and establish that there is no causative relationship between its alleged injury and Lands' End's alleged TCPA violations. This is true of all three faxes referencing Lands' End, including the June 15, 2015 fax in which Wyndham did not include opt-out language. If, as Gorss admits, it did not matter what the opt-out language said, it logically follows that it doesn't matter that there was no opt-out language in the June 15, 2015 fax.

This fact is further demonstrated by Gorss's treatment of other faxes he received and forwarded to Anderson + Wanca. Over a period of approximately four years, Gorss forwarded more than 2,100 faxes to Anderson + Wanca. SUF, ¶ 58. Of those faxes, most had either a toll free telephone number, or email address, and many had both. *Id*. at ¶ 59. More importantly, at least 230 of the faxes Gorss provided to his attorneys included fully compliant opt-out language – a toll free telephone number, an email address and the notice at issue in this case, that the sender was legally required to honor opt-outs within 30 days. *Id*. at ¶ 60. When confronted with one of those faxes that included all necessary components of a TCPA compliant opt-out notice, Steven Gorss once again confirmed that Gorss's claimed injuries were not caused by the alleged TCPA violation by testifying that he never attempted to opt-out of a single fax no matter what the language said. Ex. 1, Gorss Tr. at 73:15-17; 77:6-7.

Gorss cannot escape these admissions by arguing that it need only establish a statutory violation in order to prove a "concrete and particularized injury," because, even in cases

22

involving procedural violations, Article III standing requires a showing that Gorss's claimed injury was traceable to the violation.  *See Spokeo*, 136 S.Ct. at 1549 (a plaintiff "may not allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").  In TCPA cases, there is no Article III standing where there is no harm caused by a technical violation and Gorss's admissions establish that there is no causal relationship here.  *See e.g., St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500 (8th Cir. 2018) (holding that plaintiff lacked Article III standing because "[plaintiff's representative] testified that he never attempted to opt-out of receiving future faxes from [defendant]" despite the fact that the opt out notice provided the means and opportunity to do so); *Selby v. Ocwen Loan Servicing*, No. 3:17-CV-0973-CAB-BLM, 2017 WL 5495095, at *3 (S.D. Cal. Nov. 16, 2017) (dismissing TCPA claim because "use of an ATDS to contact plaintiff's cellular telephone in connection with its efforts to collect a debt was a bare procedural violation of the [TCPA] that is divorced from the real harms [the TCPA] is designed to prevent.").

In other non-TCPA cases involving technical statutory violations and plaintiffs who admittedly would not have acted had the violations not occurred, courts have not hesitated to dismiss claims for lack of standing.  For example, in *Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945 (S.D. Iowa 2016), a plaintiff asserted claims based on technical violations of the Fair Debt Collection Practice Act ("FDCPA") – the defendant debt collector's notice failed to provide all necessary information, including information concerning plaintiff's right to dispute the debt and obtain information concerning his original creditor.  *Id*. at 953-54.  The court found that the plaintiff lacked standing because he admittedly had no intention to dispute the debt and therefore could not establish concrete harm the FDCPA was designed to prevent.  *Id*. at 954 ("Jackson does not indicate he ever intended to dispute his debt in any way . . . .  In other words,

23

Jackson does not argue he suffered the concrete harm the disclosure requirements . . . of the FDCPA are designed to prevent.").

Gorss lacks standing for the same reason in this case; it cannot establish concrete harm the opt-out notice provisions of the TCPA were intended to prevent – depriving a recipient of the means and opportunity to opt-out of solicited faxes.  Gorss was simply not going to opt-out no matter what.  *See* Ex. 6, Gorss Tr. (Cetis Action) at 155:21-158:11; Ex. 7, Gorss Tr. (Otis Action) at 75:2-16; Ex. 4, Gorss Tr. (Sprint Action) at 150:1-151:5.

Finally, Gorss's admissions also establish that it lost no greater amount of paper, toner, ink and time (its only claimed damages) as a result of the technically deficient opt-out language in the January 12, 2015 and May 16, 2016 faxes and the absent language in the June 15, 2015 fax.  Since Gorss would not have opted out under any circumstances, it lost the exact same amount of paper, toner, ink and time as he would have had the fully compliant opt-out notices been included in all three faxes and, under those circumstances, it cannot establish Article III standing.  *See e.g., ARcare v. Qiagen N. Am. Holdings, Inc.*, No. 16-7638, 2017 WL 449173, at *3 (C.D. Cal. Jan. 19, 2017) (dismissing plaintiff's TCPA claim based on deficient opt-out notice for lack of Article III standing where plaintiff "ha[d] not shown that its injury is traceable or related to [the defendant's] alleged violation of the TCPA" because plaintiff lost the exact same amount of paper, toner, ink and time as it would have if the violation had not occurred).

For all of these reasons, Gorss cannot establish Article III standing because there is no relationship whatsoever between Lands' End's alleged TCPA violations and its claimed damages and Gorss's claims must be dismissed in their entirety.

3231168

### E.      Gorss Lacks Prudential Standing Because Its Claims Fall Outside the TCPA's Zone-Of-Interest.

In addition to Article III standing, Gorss also bears the burden to establish prudential standing, which embodies "judicially self-imposed limits on the exercise of federal jurisdiction," *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), and requires that "a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* at 12. The Second Circuit requires that prudential standing exist in order for courts in this Circuit to have subject matter jurisdiction. *Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (the "[t]he concept of standing—even its prudential dimension—is a limitation on federal court jurisdiction.") (internal citations omitted). A plaintiff is not entitled to a right of review in federal court "if [its] interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Stoops v. Wells Fargo Bank N.A.*, 197 F. Supp. 3d 782, 804 (W.D. Penn. 2016) (*quoting Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388 (1987)).

Congress's and the FCC's intent in passing the TCPA, as amended by the Junk Fax Prevention Act, was to protect "consumers [who] felt besieged by unsolicited faxes despite [their] asking to be removed from senders fax lists." S. Rep. No. 109-76 (2005) (internal quotations omitted). Congress and the FCC wanted to curb "the burden of . . . paying for the cost of paper and toner, but also the opportunity costs of time spent reading and disposing of faxes, the time the machine is printing an advertisement and is not operational for other purposes, and the intrusiveness of faxes transmitted at inconvenient times, including the middle of the night." *Id.* (internal quotations omitted). With these considerations in mind, the FCC noted "that facsimile transmission from persons or entities who have an established business relationship with the recipient can be deemed to be invited or permitted by the recipient." *Id.*

(internal quotations omitted).  That exception was almost removed; however, it was retained in

the Junk Fax Prevention Act in order to avoid potentially crippling litigation.  *Id.*  Instead of

removing the exception, the JFPA required that all unsolicited faxes include opt-out notices,

which would provide the recipient the ability to "decline to receive future unsolicited

commercial faxes from the same sender" and to know the identity of the sender.  *Id.*  (the JFPA

"would require senders of unsolicited commercial faxes to identify themselves to the recipients

with truthful facsimile and telephone numbers where a recipient can contact the sender, thereby

better informing the recipient of the identity of the sender.").  This legislative history shows that

the TCPA was designed to protect individuals from overreaching fax advertisers while striking a

balance that allows faxing to be used in commerce as long as a method to opt-out of future faxes

was provided.

The TCPA's legislative history makes equally clear that it was not intended to protect

professional plaintiffs who willfully ignore opt-out notices for the sake of manufacturing

lawsuits.[11]  In cases involving similar plaintiffs who sought to generate litigation based on

technical statutory violations, courts have not hesitated to grant defendants summary judgment

on the ground that the plaintiff falls outside the TCPA's zone of interests.  One example is

*Stoops v. Wells Fargo Bank N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016), in which an enterprising

plaintiff purchased over thirty five cell phones with the hope of receiving calls from creditors

looking for past owners, so that she could receive more calls and then collect statutory damages

under the TCPA.  *Id.* at 788.  Based on the plaintiff's admissions about her action in encouraging

---

[11] During oral argument on the defendant's motion for summary judgment in one of Gorss's other TCPA class actions filed in this Court, Judge Chatigny requested supplemental briefing from the parties on the issue of whether Congress intended for a plaintiff like Gorss to have an actionable claim under the TCPA where he could have opted out but chose instead to collect faxes and send them to class counsel for the purpose of filing lawsuits.  *Gorss Motels, Inc. v. Cetis, Inc., et al.*, 3:16CV1368 (RNC) (D. Conn.).  A copy of the transcript of the telephonic hearing (Doc. No. 112) is attached as Exhibit 19 to the Doherty Declaration filed herewith.  Instead of providing supplemental briefing, Gorss agreed to dismiss its claims against Cetis with prejudice.  *Id.* at Doc. No. 115.

further calls, the court found that the plaintiff lacked prudential standing and granted summary judgment to the defendant. *Id*. at 805 ("it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA as a result of its 'outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance.'") (citations omitted); *see also Tel. Sci. Corp. v. Asset Recovery Solutions, LLC*, No. 15-CV-5182, 2016 WL 4179150, at *15-16 (N.D. Ill. Aug. 8, 2016) (dismissing TCPA case because plaintiff did not fall within the TCPA's zone of interests where plaintiff operated technology that detected robocalls and purposefully answered those calls to incur damages); *Cellco P'ship v. Wilcret Health Care Mgmt.*, No. 09-3534-MLC, 2012 WL 1638056, *6 (D. N.J. May 8, 2012) (plaintiffs did not fall within the zone of interests of the TCPA where "they attempt[ed] to use the statute in a way not intended or contemplated by Congress.").

Gorss's conduct in this case is no less egregious than the plaintiff's conduct in *Stoops*. Gorss first consulted with its attorneys at Anderson + Wanca in January 2011 and began providing faxes to Anderson + Wanca at that time. SUF, ¶ 57. Over the next four years, Gorss continued to receive thousands of faxes, many with opt-out provisions, including many from Wyndham with opt-out notices that provided Gorss with the means and opportunity to ensure that it never received any of the faxes at issue in this case. SUF, ¶¶ 65-67; Ex. 1, Gorss Tr. at 80:7-11 (admitting that if Gorss had taken the minutes necessary to opt out, Wyndham would have stopped sending it faxes); *id*. at Ex. 4, Gorss Tr. (Sprint Case) at 156:22-157:2 (same). However, instead of making any attempt to opt-out, Gorss simply continued to provide its fax number to Wyndham to enable the receipt of additional faxes it could collect and send to its class action counsel at Anderson + Wanca. Then, when it finally sold its Super 8 Motel, including its

fax machine and fax line, and would no longer be receiving faxes from Wyndham (i.e. when Gorss had maximized potential Wyndham Approved Supplier defendants), Gorss became a professional plaintiff and filed more than twenty class action suits against Wyndham Approved Suppliers.  Indeed, Gorss's president, Steven Gorss, has maintained Gorss's corporate form for the sole purpose of prosecuting these manufactured lawsuits.  *Id* at ¶ 95.; Ex. 1, Gorss Tr. at 14:16-17.

The TCPA was not intended to protect the interests of a plaintiff who exploits it for its own profit.  For this additional reason, this Court should grant Lands' End's summary judgment on Gorss's TCPA claim.

## II.     LANDS' END IS ENTITLED TO SUMMARY JUDGEMENT ON GORSS'S CLAIM FOR TREBLE DAMAGES.

For the reasons set forth above, Lands' End is entitled to summary judgment on Gorss's TCPA claim in its entirety.  However, if, for some reason Gorss's TCPA claim survives on one or more of the faxes at issue (and it should not), this Court should grant Lands' End's summary judgment on Gorss's disingenuous request for treble damages.

The TCPA only entitles Gorss to treble damages where it can show that a sender "willfully or knowingly" violates the TCPA.  *See* 47 U.S.C. § 227(b)(3) ("If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."). In this case, even if Gorss could establish a violation by Lands' End, there is no evidence whatsoever that it "willfully or knowingly" violated the TCPA.

To establish entitlement to treble damages, a plaintiff must be able to prove that the defendant intentionally or knowingly violated the TCPA, not simply that it intentionally or

knowingly sent a fax or, as in this case, knowingly participated in a franchisor's fax program. *See Lary v. Trinity Physiical Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("If we interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are not 'willful [ ] or knowing[ ].'"); *see also Haysbert v. Navient Solutions, Inc.*, No. CV 15-144 PSG, 2016 WL 890297, at *10 (C.D. Cal. Mar. 8, 2016) (to establish entitlement to treble damages, the statute requires a showing that the defendant "intend[ed] or [knew] that it was performing each of the elements of a TCPA claim (i.e. that it was making a call, to a person who did not provide prior express consent, using an automated system).").

In this case, the undisputed facts establish as a matter of law that, if there was any TCPA violation, Lands' End had no knowledge of it.  First, Wyndham invited Lands' End to participate in its Approved Supplier fax program, advising Lands' End that it was one of the most effective channels of communication with its franchisees and that its franchisees agreed to receive advertisements from Approved Suppliers products via the Sourcing Agreement.  SUF, ¶ 73. Moreover, Wyndham provided the opt out language and disclaimer language in the January 12, 2015 and May 16, 2016 faxes and failed to include opt out language in the June 15, 2015 fax. SUF, ¶¶ 74-87.  These facts alone establish that Gorss's request for treble damages is without merit.  *See e.g.*, *Lary*, 780 F.3d at 1107 (dismissing claims for treble damages because "although [plaintiff] alleged that [defendant] 'us[ed] or caus[ed] others to use a . . . device to send' an unsolicited advertisement to [plaintiff's] fax machine, he failed to allege that [defendant] knew the advertisement was unsolicited.").

In addition, Gorss never gave Wyndham or Lands' End any reason to believe it did not consent to receive the faxes.  Gorss repeatedly provided its fax number to Wyndham, both before

and after receiving faxes referencing Lands' End and other Wyndham Approved Suppliers, and admittedly made no attempt to opt out of receiving the faxes. These facts are also sufficient to defeat Gorss's claim for treble damages. *See e.g.*, *Harris v. World Fin. Newtork Nat'l. Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012) ("In order for Plaintiff to prove that Defendants knew that they acted in a manner that violated the statute (regardless if Defendants actually knew that they were violating the statute), Plaintiff must also show that Defendants knew that Plaintiff did not consent to the phone calls.").

For these reasons, even if Gorss's TCPA claim somehow survives, its request for treble damages must be dismissed.

## III.     GORSS'S CLAIM FOR VIOLATIONS OF THE CONNECTICUT JUNK FAX STATUTE ALSO FAILS AS A MATTER OF LAW.

The Connecticut Junk Fax Statute (the "Connecticut Statute") states, in pertinent part: "No person shall use a machine that electronically transmits facsimiles . . . to transmit unsolicited advertising material or an unsolicited telephone message which offers to sell goods or services." Conn. Gen. Stat. Ann. § 52-570c(a).

Gorss's claim for violation of this statute fails as a matter of law because, like the TCPA, it only prohibits the sending of "unsolicited" faxes and, as set forth in Section I.B.2, *supra*, all of the faxes at issue in this case were solicited. In addition, the statute only applies where the defendant "used" a machine to transmit unsolicited fax advertisements. As explained above, the undisputed facts establish that Lands' End never "used" any machine to send a fax to Gorss. Instead, as required under its Sourcing Agreement with Wyndham, Lands' End participated in Wyndham's marketing program and, at Wyndham's suggestion, participated in its fax program. SUF, ¶ 73. All three faxes at issue were sent by Wyndham through its fax vendor, Western Printing, who utilized the services of a third company, WestFax, to distribute the faxes. *Id*. at ¶

3231168

74-85.  Unlike the TCPA, the Connecticut Statute does not impose liability on the entity whose products are advertised in the fax, but only on the person or entity who actually "used" the machine to transmit the fax.  For this additional reason, Gorss's state law claim fails as a matter of law and must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Lands' End respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Gorss's claims in their entirety and with prejudice.

Respectfully submitted,

/s/ Christopher L. Jefford
_____
Christopher L. Jefford
Bonner Kiernan Trebach & Crociata, LLP
100 Peral Street, 14th Floor
Hartford, CT 06103
800-840-5087
(fax) (860) 249-8800
Federal I.D. No.: 26975
cjefford@bonnerkiernan.com

Daniel P. Tighe (*pro hac vice*)
dpt@dcglaw.com
Donnelly, Conroy & Gellhaar, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
T: 617-720-2880
F: 617-720-3554

Adam R. Doherty (*pro hac vice*)
adoherty@princelobel.com
Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

*Counsel for Defendant Lands' End, Inc.*

31

## <u>CERTIFICATE OF SERVICE</u>

   I, Christopher L. Jefford, hereby certify that on June 26, 2019 a true copy of the above document was filed electronically and served by e-mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


         /s/ Christopher L. Jefford___
         Christopher L. Jefford

32