## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GORSS MOTELS, INC.,
*Plaintiff*,
v.

LANDS' END, INC.,
*Defendant.*

No. 3:17-cv-00010 (VAB)

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Gorss Motels, Inc., ("Plaintiff" or "Gorss Motels") as the representative of a putative

class action, has sued Lands' End, Inc., ("Lands' End" or "Defendant") for allegedly sending

unsolicited facsimiles in violation of the Telephone Consumer Protection Act of 1991, as

amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA" or "Act"), and

Conn. Gen. Stat. § 52-570c.

Lands' End has moved for summary judgment on all of Gorss Motels's claims. Motion

for Summary Judgment, ECF No. 93 (June 26, 2019) ("Def.'s Mot."); Memorandum of Law in

Support of Def.'s Mot., ECF No. 94 (June 26, 2019) ("Def.'s Mem."); Local Rule 56(a)(1)

Statement of Undisputed Material Facts, ECF No. 96 (June 26, 2019) ("Def.'s SMF").

Gorss Motels has opposed Lands' End's motion for summary judgment. Plaintiff's

Memorandum in Opposition to Def.'s Mot., ECF No. 112 (July 31, 2019) ("Pl.'s Opp'n"); Local

Rule 56(a)(2) Statement of Facts, ECF No. 113 (July 31, 2019) ("Pl.'s SMF").

For the following reasons, Lands' End's motion for summary judgment is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background[1]

This case arises out of three facsimile advertisements sent to Gorss Motels on three separate dates: January 12, 2015, June 15, 2015, and May 16, 2016 (collectively, the "Faxes"). Pl.'s SMF ¶¶ 82, 84. The Wyndham Hotel Group ("Wyndham") is a hotel franchise company that franchises several brands, including Super 8®, and related lodging subsidiaries including Super 8 Worldwide, Inc. *Id.* ¶¶ 1, 3.

In 1988, Gorss Motels first entered into a franchise agreement ("1988 Franchise Agreement") with Super 8 Motels, Inc. to operate a Super 8® lodge. *Id.* ¶ 2.

On March 11, 2009, Gorss Motels and Super 8 amended the 1988 Franchise Agreement to extend the term to August 15, 2014. *Id.* ¶ 7.

On July 22, 2014, as the expiration of the 1988 Franchise Agreement approached, Gorss Motels applied to Wyndham to continue as a franchisee. *Id.* ¶ 10.

On September 20, 2015, Gorss Motels entered into a second franchise agreement ("2014 Franchise Agreement") to operate the same Super 8 for an additional twenty-year term. *Id.* ¶ 11.

The 2014 Franchise Agreement required Gorss Motels to "participate in System marketing programs[,]" Fenimore Decl., Ex. G: Super 8 Worldwide In., Franchise Agreement, ECF No. 106 at 57, § 3.4.1 (June 26, 2019) ("2014 Franchise Agreement"), and that Gorss Motels "purchase or obtain certain items [Wyndham] designate[s] as proprietary or that bear or depict the Marks, such as signage, only from suppliers we approve," *id.* at 60, § 3.10. Wyndham allowed Gorss Motels to "purchase other items for the Facility from any competent source . . . so

---

[1] The following facts are undisputed unless otherwise indicated.

long as the items meet or exceed System Standards." *Id.* In addition, the 2014 Franchise

Agreement stated that Wyndham could "offer optional assistance to [Gorss Motels] with

purchasing items used at or in the Facility." *Id.* at 64, § 4.4. Furthermore, Wyndham's "affiliates

may offer this service on [Wyndham's] behalf." *Id.*

In connection with the 2014 Franchise Agreement, Gorss Motels also received a

Franchise Disclosure Document, which disclosed that Wyndham's affiliate, Worldwide Sourcing

Solutions, Inc. (also referred to as "WSSI"), "would be offering goods and services to

Wyndham's franchisees and the franchisees of the Lodging Affiliates as defined below." Pl.'s

SMF ¶¶ 17-18 (quotations and citations omitted); *see also id.* ¶ 28 (stating that WSSI is a

wholly-owned subsidiary of Wyndham). Item 8 of the Franchise Disclosure Document disclosed

that franchisees like Gorss Motels "must purchase equipment that meets Super 8 standards and

purchase mark-bearing items only from suppliers for these products included in WSSI's

Approved Supplier program." *Id.* ¶ 21 (quotations and citations omitted).

Section 3.1 of the 2014 Franchise Agreement required Gorss Motels to renovate its

property in accordance with the Property Improvement Plan Report. *Id.* ¶ 26; *see also* 2014

Franchise Agreement, ECF No. 106 at 93, § 2.1 and 97 ("You must renovate and improve the

Facility in accordance with any Punch List attached to this Agreement, any Approved Plans and

System Standards. . . . The PIP identifies specific items inspected at the Facility and were not in

compliance with brand standards and need to be corrected.").

On August 26, 2014, before executing the 2014 Franchise Agreement, Gorss Motels

signed the Property Improvement Plan Report, thus acknowledging and agreeing that Wyndham-

approved vendors would receive its contact information to reach out and offer their products and

services, which were required to complete the Property Improvement Plan Report. *Id.* at 97 ("By

signing this PIP, I acknowledge and agree that select pieces of this PIP may be provided to our approved vendors . . . Only information necessary for the vendor to offer their products and services will be provided, including contact information, property of address, number of rooms, brand converting to, and a list of items related to necessary or required products and services.").

Gorss Motels's Property Improvement Plan Report identified the elevators at the Gorss Motels property as not meeting brand quality standards. *Id.* ¶ 52. The Property Improvement Plan Report provided Gorss Motels one year to refurbish the property's elevator from Lands' End. *Id.* ¶ 53.

Worldwide Sourcing Solutions, Inc. received commissions from its "Approved Supplier" program, also known as its "Strategic Sourcing" program, and entered into agreements with third-party "Approved Suppliers," whose various products and services are offered to Wyndham's franchisees for purchase and use. *Id.* ¶¶ 29-30. The Strategic Sourcing program "exists, in part to aid franchisees in obtaining supplies that meet the requirements of Wyndham's System Standards." *Id.* ¶ 32 (quotation marks and citation omitted). Franchisees received and had access to Worldwide Sourcing Solutions, Inc.'s communications regarding this program from a variety of channels. *Id.* ¶ 34. Wyndham and Worldwide Sourcing Solutions, Inc. provided Gorss Motels with Approved Supplier directories listing Approved Suppliers, including Lands' End. *Id.* ¶ 35. One of the marketing programs that WSSI offered as part of the Approved Supplier program was facsimiles sent to franchisees. *Id.* ¶ 40. Gorss Motels never objected to participating in the Approved Supplier program until this lawsuit. *Id.* ¶ 38.

As part of the 2014 Franchise Agreement, franchisees were required to attend Wyndham conferences, where Approved Suppliers displayed products and services. *Id.* ¶ 42 (citing 2014 Franchise Agreement, ECF No. 106 at 59, § 3.9). In 2012, Steven Gorss, the owner of Gorss

Motels, attended Wyndham conferences and provided his contact information, including his fax number, (860) 632-8889, as part of the registration process. *Id.* ¶ 43. Mr. Gorss swiped his badge at various Approved Suppliers' booths, which transmitted his contact information to the Approved Supplier. *Id.* ¶ 44.

Gorss Motels affirmatively and "periodically provided [its] fax number to Wyndham as part of the franchisor/franchisee relationship." *Id.* ¶ 45. For example, on January 21, 2010, Gorss Motels submitted to Wyndham by facsimile a contact form providing its fax number. *Id.* ¶ 46. On July 22, 2014, Gorss Motels provided its fax number to Wyndham in its franchise renewal application. *Id.* ¶ 47. Finally, in the 2014 Franchise Agreement, Gorss Motels again provided its fax number. *Id.* ¶ 48. On November 23, 2015, Gorss Motels received by e-mail from Wyndham a "site contact" change form. *Id.* ¶ 50. Gorss Motels completed this form, including its fax number, and returned it to Wyndham the next day. *Id.* ¶ 51.

Gorss Motels' fax number "was published in Super 8 Motel directories and [Gorss Motels] was aware that the contact information it provided to Wyndham would be used for that purpose." *Id.* ¶ 52. Gorss Motels "never advised Wyndham or Super 8 that it did not want to receive communications by fax." *Id.* ¶ 53.

On October 28, 2014, Lands' End entered into an agreement with Worldwide Sourcing Solutions, Inc. (the "Sourcing Agreement") that made available for sale products to Wyndham and its franchisees, including Gorss Motels. *Id.* ¶¶ 68-69. Under the Sourcing Agreement, Lands' End became an "Approved Supplier" of Wyndham-branded apparel for Wyndham franchisees, and was required to participate in Wyndham's marketing program, which included various forms of marketing directly to franchisees. *Id.* ¶¶ 70-72. After executing the Sourcing Agreement, Wyndham recommended that Lands' End use Wyndham's fax broadcasting service. *Id.* ¶ 73.

On December 9, 2014, Lands' End sent a draft facsimile to Wyndham. *Id.* ¶ 74. After receiving this draft, Wyndham revised the draft, and unilaterally added another disclaimer and an opt-out notice. [2] *Id.* ¶¶ 75-76. Wyndham asked a third-party vendor, Western Printing, to transmit the flyer by facsimile to certain specified Wyndham franchisees. *Id.* ¶¶ 77-78. Western Printing, in turn, subcontracted the actual transmission of the Fax to another third-party vendor, WestFax. *Id.* ¶ 80. Lands' End had no relationship or communication with either Western Printing or WestFax. *Id.* ¶¶ 79, 81.

On January 12, 2015, WestFax had the facsimile sent from the "973 Source Number" to Gorss Motels's fax number of (860) 632-8889, *id.* ¶ 82, which is the fax number that Gorss Motels had provided to Wyndham many times over the years, *id.* ¶ 45.

On June 15, 2015 and May 16, 2016, two additional facsimiles (one for each date) referencing Lands' End were transmitted to Gorss Motels's fax number. *Id.* ¶ 84. The same process was used to revise and send all three of the Faxes. *Id.* ¶ 85. Although the third fax (transmitted on May 16, 2016) contained the same opt-out notice as the first fax (transmitted on January 12, 2015), the second fax (transmitted on June 15, 2015) did not contain an opt-out notice. *Id.* ¶¶ 86-87.

After receiving the Faxes, Gorss Motels never contacted anyone to request that facsimiles stop, and never informed Wyndham that Gorss Motels did not want to receive communications related to Approved Suppliers by fax. *Id.* ¶¶ 61, 63. In or around January 2011, Mr. Gorss first consulted Gorss Motels' counsel in this case, at least in part, because he wanted the faxes to stop. *Id.* ¶¶ 54-55. At that time, Gorss Motels began to provide copies of faxes it was receiving to its attorneys. *Id.* ¶ 57. Between 2011 and 2016, Gorss Motels sent over 2,100 pages of faxes to

---

[2] The disclaimer on the Fax reads as follows: "To opt out from future faxes, email strategic.sourcing@wyn.com or call this toll-free number: (877) 764-4212." Pl.'s SMF ¶ 76.

counsel, Anderson + Wanca. *Id.* ¶ 58. Gorss Motels did not attempt to opt-out of any of these facsimile advertisements, *id.* ¶ 61, instead it collected the faxes to send to its attorneys, *id.* ¶ 62. Gorss Motels never discussed opt-out language with its attorneys. *Id.* ¶ 63. Mr. Gorss "did not attempt to opt out of the over 2,000 pages of fax ads he received," *id.* ¶ 61, and "didn't read" the opt-out language that was on most of the faxes, Gorss Dep., ECF No. 98 at 77:7 (June 1, 2018).

On August 4, 2016, Gorss Motels sold its Super 8® franchise, and is no longer a Wyndham franchisee. Pl.'s SMF ¶¶ 90-91. While it was a Wyndham property, Gorss Motels received only three faxes relating to Lands' End, the Faxes. *Id.* ¶¶ 82, 84.

Gorss Motels alleges that Lands' End profits and benefits from the sale of products, goods, and services advertised in the allegedly unsolicited Faxes. Am. Compl., ECF No. 49 ¶ 14 (Dec. 12, 2017). Furthermore, Gorss Motels alleges that the Faxes lack required opt-out language, *id.* ¶ 16, and that Gorss Motels has lost paper, toner, and time, resources that would otherwise be used in the course of their business activities, *id.* ¶ 36.

## B. Procedural History

On January 4, 2017, Gorss Motels filed a putative class action Complaint against Lands' End and several unnamed defendants, challenging their alleged practice of sending unsolicited facsimiles in violation of the Telephone Consumer Protection Act of 1991 (or "TCPA"). Compl., ECF No. 1 ¶¶ 1-2 (Jan. 4, 2017).

On the same day, Gorss Motels moved to certify the class, or in the alternative, stay proceedings. Mot. for Class Certification and for a Temporary Stay of Further Proceedings on that Mot., ECF No. 2 (Jan. 4, 2017).

On March 20, 2017, Lands' End filed a motion to stay the litigation, pending a decision by the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") on the viability of the FCC's "solicited fax" rule. Mot. to Stay, ECF No. 20 (Mar. 20, 2017).

On April 10, 2017, Gorss Motels objected to Lands' End's motion to stay. Mem. in Opp'n, ECF No. 33 (Apr. 10, 2017).

On April 25, 2017, the Court entered an order addressing several motions: it denied without prejudice Gorss Motel's motion to certify the class, ECF No. 2, and found as moot both Gorss Motel's motion to stay, ECF No. 2, and Lands' End's motion to stay, ECF No. 20. Order, ECF No. 36 (Apr. 25, 2017). The Court also ordered Lands' End to respond to the Complaint within thirty days. *Id.*

On May 25, 2017, Lands' End timely filed its Answer with affirmative defenses. Answer, ECF No. 37 (May 25, 2017).

On December 12, 2017, Gorss Motels amended its Complaint to add a similar claim under Conn. Gen. Stat. § 52-570c. Am. Compl. ¶¶ 37-40.

On January 2, 2018, Lands' End filed another motion to stay, Mot. to Stay, ECF No. 59 (Jan. 2, 2018), and a supporting memorandum, Mem. in Supp., ECF No. 60 (Jan. 2, 2018).

On February 6, 2018, Gorss Motels objected to the stay. Mem. in Opp'n to Def.'s Mot. to Stay, ECF No. 65 (Feb. 6, 2018).

On February 20, 2018, Lands' End replied, Reply, ECF No. 66 (Feb. 20, 2018), and moved to vacate the discovery deadline of March 2, 2018, and to stay discovery until the Court's decision on its motion to stay. Mot., ECF No. 67 (Feb. 20, 2018).

On March 1, 2018, the Court denied both Lands' End's motion to stay and motion to vacate the discovery deadline, "find[ing] that a stay could cause plaintiff prejudice in advancing its claims against defendant." Order, ECF No. 68 (Mar. 1, 2018).

The Court granted several joint motions for extensions of the discovery deadline. Docket Entries, ECF Nos. 69-84. The final discovery deadline was March 29, 2019. Order, ECF No. 84 (Feb. 26, 2019).

On April 5, 2019, Gorss Motels filed a second motion to certify the class and a supporting memorandum. Mot. to Certify Class, ECF No. 85 (Apr. 5, 2019), Mem. in Supp. ECF No. 86 (Apr. 5, 2019).

On June 26, 2019, Lands' End moved for summary judgment and filed a statement of material facts, supporting memorandum, and various exhibits. Def.'s Mot.; Def.'s Mem.; Def.'s SMF; *see* Docket Entries, ECF Nos. 98-106 (containing the supporting exhibits).

On July 31, 2019, Gorss Motels opposed Lands' End's motion for summary judgment. Pl.'s Opp'n; Pl.'s SMF.

On August 14, 2019, Lands' End replied. Lands' End, Inc.'s Reply in Supp. of its Mot. for Summ. J., ECF No. 114 (Aug. 14, 2019) ("Def.'s Reply").

On August 23, 2019, Gorss Motels filed a motion for leave to file a sur-reply. Mot. for Leave to File Sur-Reply in Opposition to Def.'s Mot., ECF No. 116 (Aug. 23, 2019).

On August 28, 2019, the Court granted Gorss Motel's motion for leave to file a sur-reply, Order, ECF No. 119 (Aug. 28, 2019).

On August 29, 2019, Gorss Motel's filed its sur-reply in opposition to Lands' End's motion for summary judgment, Pl.'s Sur-reply in Opp'n to Def.'s Mot., ECF No. 120 (Aug. 29, 2019) ("Pl.'s Sur-reply").

On October 9, 2019, this case was re-assigned for all further proceedings. Order of Transfer, ECF No. 123 (Oct. 9, 2019).

Throughout this time, both Gorss Motels and Lands' End have filed various notices and responses to notices regarding supplemental authority. Notice of Additional Authority, ECF No. 109 (July 3, 2019); Supplemental Notice of Additional Authority, ECF No. 115 (Aug. 14, 2019); Supplemental Notice of Additional Authority, ECF No. 117 (Aug. 27, 2019); Response, ECF No. 118 (Aug. 27, 2019); Supplemental Notice of Additional Authority, ECF No. 121 (Oct. 3, 2019); Response, ECF No. 125 (Oct. 11, 2019).

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III.    DISCUSSION

To protect consumers from unsolicited fax advertisements, Congress passed the Telephone Consumer Protection Act of 1991 and amended it with the Junk Fax Prevention Act in 2005. *See* 47 U.S.C. § 227.

The Telephone Consumer Protection Act of 1991 forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain exceptions are met. 47 U.S.C. § 227(b)(1)(C).

An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id*. at § 227(a)(5). An unsolicited fax advertisement is only permissible when (1) the unsolicited advertisement "is from a sender with an established business relationship with the recipient;" (2) the sender obtained the recipient's fax number either via "voluntary communication" from the recipient or from "a directory, advertisement, or site on the internet" to which the recipient agreed to make the number publicly available; and (3) the unsolicited advertisement contains an opt-out notice meeting the requirements set forth in § 227(b)(2)(D). *See* § 227(b)(1)(C), (b)(2)(D).

The Federal Communications Commission ("FCC") has authority to prescribe regulations to implement the Telephone Consumer Protection Act of 1991. *Id.* § 227(b)(2); *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370 (2012) (noting the Act directs the FCC to prescribe implementing regulations). The regulations define "sender" as any "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).

The Telephone Consumer Protection Act of 1991 creates a private right of action for violations of the Act or the "regulations prescribed under" the Act, and provides for statutory damages in the amount of $500 for each violation, injunctive relief against future violations, and treble damages if the Court finds the defendant "willfully or knowingly" violated the Act. *Id.* § 227(b)(3).

Conn. Gen. Stat. § 52-570c similarly forbids unsolicited fax advertisements:

> No person shall use a machine that electronically transmits facsimiles through connection with a telephone network or a device that automatically transmits a recorded telephone message to transmit unsolicited advertising material or an unsolicited telephone message which offers to sell goods or services.

Conn. Gen. Stat. § 52-570c(a).

Lands' End seeks dismissal of Gorss Motels's claims for several reasons: (1) Gorss Motels lacks both Article III and prudential standing; (2) Lands' End was not the "sender" of the faxes at issue and thus is not subject to TCPA liability; and (3) even assuming Gorss Motels has standing and Lands' End was the "sender," Gorss Motels solicited the faxes at issue, and the faxes thus did not need the specific, additional disclosure that Gorss Motels claims is missing. Def.'s Mot. at 2-3. Lands' End seeks dismissal of the state law claim for the same reasons, and for the additional reason that Connecticut law does not provide for liability against the person or entity whose goods or services are referenced in a facsimile transmitted by a third-party. *Id.* at 3. In the alternative, Lands' End seeks partial summary judgment on the treble damages claim, because Lands' End alleges that it did not act in a "knowing or willful" manner. *Id.*

The Court addresses these arguments in turn.

### A. Standing

#### 1. Article III Standing

Because "standing is necessary to our jurisdiction," a federal court is required to determine standing at the outset. *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016). The "irreducible constitutional minimum" of standing in federal court requires: (1) "injury in fact;" (2) that is "fairly traceable" to a defendant's challenged conduct; and (3) that is "likely to be redressed" by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 589-90 (1992).

To support standing, an injury must be both "concrete and particularized." *Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 3278926, at *7 (S.D.N.Y. Aug. 1, 2017) (quoting *Spokeo[3], Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). A "bare" statutory violation is insufficient to confer constitutional standing absent some "concrete" harm. *Id.* at *7. "A court is properly respectful of Congress's judgment in affording a legal remedy for the harm." *Strubel*, 842 F.3d at 188 (citing *Spokeo*, observing that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is ... instructive and important"). That said, a plaintiff cannot allege a bare statutory procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III. *See Spokeo*, 136 S. Ct. at 1549.

Importantly, the Second Circuit has recently held:

> [I]n the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest

---

[3] In *Spokeo*, the plaintiff alleged that Spokeo, a people search engine, published incorrect information about the plaintiff. The plaintiff brought suit under the Fair Credit Reporting Act of 1970 ("FCRA"), which "requires consumer reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy' of consumer reports," and authorizes private suits for willful failure to comply with any requirement of the FCRA. The Ninth Circuit found that the plaintiff had standing based on the alleged violation of the plaintiff's statutory rights under the FCRA. The Supreme Court vacated the Ninth Circuit's decision because the Ninth Circuit had considered whether the plaintiff's injury was particularized but not whether it was concrete.

injury in fact. But where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient "risk of real harm" to the underlying interest to establish concrete injury without "need [to] allege any additional harm beyond the one Congress has identified."

*Strubel*, 842 F.3d at 189 (quoting *Spokeo*, 136 S. Ct. at 1549).

Lands' End argues that Gorss Motels lacks Article III standing because it cannot demonstrate a causal connection between the injury and the Faxes. *See* Def.'s Mem. at 21. Lands' End asserts that because Mr. Gorss conceded that he never read any of the faxes received from Wyndham and would not have opted-out anyways, but instead collected the faxes with an eye towards litigation, Gorss Motels failed to establish that the Faxes caused a concrete harm. *Id.* at 21-24 (citing excerpts from Mr. Gorss's deposition). According to Lands' End, "[s]ince Gorss would not have opted out under any circumstances, it lost the exact same amount of paper, toner, ink and time as he would have had the fully compliant opt-out notices been included in all three faxes," and as a result, Gorss Motels "cannot establish Article III standing." *Id.* at 24.

Gorss Motels argues that the "receipt of an unsolicited fax advertisement is a 'concrete' injury," Pl.'s Opp'n at 28, and that "[t]he Second Circuit has recognized that violation of a statutory disclosure requirement is a 'concrete,' yet intangible, injury under *Spokeo*," *id.* at 29 (citing *Spokeo*, 136 S. Ct. 1540, and *Strubel*, 842 F.3d 181). Gorss Motels notes that its injury is traceable to Lands' End's conduct, because it argues that Lands' End "sent" the fax advertisements "without prior express permission," which violated the TCPA. *Id.* at 27, 29. Further, Gorss Motels argues that it was not required to opt-out of receiving fax ads or notify fax advertisers to stop sending fax ads prior to filing suit under the TCPA. *Id.* at 30-31.

In reply, Lands' End emphasizes that "because Gorss was determined not to opt out, Gorss was not harmed by a fax that included no opt out language." Def.'s Reply at 9. According

to Lands' End, "since Gorss admits that it would not follow any opt out language, it was not harmed by the failure to include such language." *Id.*

The Court disagrees.

Although the Second Circuit in *Strubel* did find that the plaintiff lacked standing on two claims, it was because the claims failed to demonstrate concrete injury, not because there was no causal connection between the injury and the complained-of conduct. *See* 842 F.3d at 191. Absent clear guidance from *Strubel*, and with the ability to resolve this case without addressing the issue of standing, however, the Court need not and will not address that issue here.

Even if there is Article III standing, the case will be dismissed for other reasons discussed below.

Accordingly, the Court will not grant summary judgment on this basis.

## 2. Prudential Standing

Lands' End also asserts that Gorss Motels lacks prudential standing because the TCPA "was not intended to protect professional plaintiffs who willfully ignore opt-out notices for the sake of manufacturing lawsuits." Def.'s Mem. at 26. Gorss Motels responds that it is undisputed it received the three Faxes at issue, so it has standing, and the courts "lack the authority to create prudential barriers to Plaintiff's congressionally granted right to pursue [its] action." Pl.'s Opp'n at 33 (quotation marks and citation omitted). According to Gorss Motels, whether or not it is a "professional plaintiff" "has no bearing on whether [Lands' End] can be held liable under the TCPA." *Id.* at 36.

The Court agrees.

For the same reasons as discussed with Article III standing, the Court will not grant summary judgment on this basis.

## B. TCPA Liability

In addressing the issue of TCPA liability, the Court begins its analysis with the FCC's solicited-fax rule, and after determining that it no longer applies, turns to whether the Faxes here were solicited.

Because this issue ultimately is dispositive, the Court need not and does not separately address the issue of whether Lands' End was, in fact, the "sender" of the Faxes.

In 2006, the FCC issued a rule that required businesses to include opt-out notices on solicited fax advertisements as well as unsolicited fax advertisements. *See Rules and Regulations Implementing the TCPA; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967, 25971-72 (FCC May 3, 2006) (formerly codified at 47 C.F.R. § 64.1200(a)(4)(iv)).

The FCC faced several challenges to this solicited-fax rule, and in 2014, it re-asserted its authority to promulgate the rule but granted some petitioners retroactive waivers. *See* Order, *Anda, Inc.*, 29 FCC Rcd. 13998, 13998, 14005 (Oct. 30, 2014). More petitions for review ensued, so the Judicial Panel on Multidistrict Litigation consolidated all petitions in the D.C. Circuit. *See Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017).

The D.C. Circuit, acting as the reviewing court under the Hobbs Act, 28 U.S.C. § 2342, invalidated the FCC's solicited fax rule. *Bais Yaakov*, 852 F.3d at 1079. In November 2018, the chief of the FCC's Consumer and Governmental Affairs Bureau codified the *Bais Yaakov* decision under his delegated rulemaking authority. *See* Elimination Order, 33 FCC Rcd. at 11179; *see also* 47 C.F.R. §§ 0.141, 0.204. The order "eliminate[d] the Commission's rule requiring opt-out notices on faxes sent with the recipients' prior permission or consent." Elimination Order, 33 FCC Rcd. at 11179.

In light of the D.C. Circuit's decision in *Bais Yaakov*, Lands' End argues that the law is now clear: the TCPA's specific disclosure requirements only apply to unsolicited facsimiles. Def.'s Mem. at 16-19; *see also* 852 F.3d 1078, 1083 (D.C. Cir. 2017) ("The text of the Act does not grant the FCC authority to require opt-out notices on solicited faxes.").

Lands' End also argues that Gorss Motels gave Wyndham permission to send the Faxes. Def.'s Mem. at 11-16. Gorss Motels provided its fax number to Wyndham in several documents, notably Gorss Motels's 2014 Franchise Agreement and the Franchise Disclosure Document. *Id.* at 14. According to Lands' End, Gorss Motels "consented to receive faxes concerning Approved Suppliers by repeatedly providing its fax number to Wyndham with full knowledge that Wyndham would provide information concerning Approved Supplers and that the contact information may be shared with certain Approved Suppliers for the purpose of offering their goods and services." *Id.* at 15. Lands' End further emphasizes that all the Faxes "were sent by Wyndham in its capacity as Gorss's franchisor and pursuant to the parties' agreement that Wyndham would provide information concerning Approved Suppliers." *Id.* Lands' End asserts that Gorss Motels' consent "is further evidenced by its receipt of Approved Supplier faxes throught the relevant time period and its continued willingness to provide its fax number, including after receiving" the first and second of the Faxes. *Id.*

In response, Gorss Motels first argues that Lands' End fails to establish that it had Gorss Motels's "prior express permission," because only Wyndham obtained permission, and "prior express permission cannot be transferred." Pl.'s Opp'n at 12-13. Second, Gorss Motels argues that "there [was] no prior express permission to transfer" because none of the documents "explicitly stated that Wyndham could or would send Plaintiff fax advertisements." *Id.* at 14. According to Gorss Motels, Lands' End can only establish implied permission, which is

insufficient under the TCPA. *Id.* Third, Gorss Motels argues that "to find prior express permission merely through the provision of a fax number would render the statutory safe harbor for EBR[4] faxes superfluous." *Id.* at 15. Gorss Motels asserts that because Wyndham could not establish a compliant opt-out notice, the Faxes violated the TCPA. *Id.* at 17.

In reply, Lands' End urges this Court to follow the United States Court of Appeals for the Eleventh Circuit's ("Eleventh Circuit") decision in *Gorss Motels, Inc. v. Safemark Systems*, 931 F.3d 1094, 1096 (11th Cir. 2019), and similarly grant summary judgment against Gorss Motels[5]. Def.'s Reply at 1-8. Lands' End emphasizes that the 2014 Franchise Agreement more than supports the notion that Gorss Motels consented to fax advertisements from Wyndham's Approved Suppliers, and that Gorss Motels "readily and frequently provided its fax numbers to Wyndham." *Id.* at 6-7.

The Court agrees.

As the Court held in a prior decision relating to another of Gorss Motels's TCPA actions, "the Second Circuit views the D.C. Circuit's decision in *Bais Yaakov* as binding." *Gorss Motels, Inc. v. Otis Elevator Co.*, No. 3:16-cv-1781 (VAB), 2019 WL 4761212, at *11 (D. Conn. Sept. 30, 2019) (citing *King v. Time Warner Cable, Inc.*, 894 F.3d 473, 476 n.3 (2d Cir. 2018)). In *King*, the Second Circuit held that "[u]nder the Hobbs act, the courts of appeals 'ha[ve] exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... all final orders' of the FCC that are reviewable under 47 U.S.C. § 402(a). 28 U.S.C. § 2342(1)." *King*, 894 F.3d at 476 n. 3. And "[w]hen agency regulations are challenged in more than one

---

[4] The elements of the established business relationship defense are: (1) a recipient's "voluntary communication" of a fax number to a fax sender; (2) that there is an established business relationships between the sender and recipient, as defined by 47 C.F.R. § 64.1200(f)(6); and (3) that the fax contains a fully compliant opt-out notice. 47 U.S.C. § 227(b)(1)(C)(i)-(iii).

[5] Lands' End also argues that Gorss Motels is precluded from its arguments under collateral estoppel, Def.'s Reply at 8-9, but the Court does not and need not address collateral estoppel in order to decide this case. Thus, the Court does not address Gorss Motels's arguments regarding collateral estoppel, raised in its sur-reply.

court of appeals, as they were in the present case, 28 U.S.C. § 2112 requires that the multidistrict litigation panel consolidate the petitions and assign them to a single circuit." *Id.* When the "[c]hallenges to the 2015 Order were assigned to the D.C. Circuit, [that court] became 'the sole forum for addressing ... the validity of the FCC's' order." *Id.* As this Court has previously found, "[t]he FCC's 2006 solicited fax rule therefore does not control here." *Gorss Motels, Inc. v. Otis Elevator Co.,* 2019 WL 4761212 at *11.

The TCPA's specific disclosure and opt-out requirements then only apply to unsolicited facsimiles. The Court thus must determine whether the Faxes were solicited or unsolicited, consistent with *Bais Yaakov*. *See Bais Yaakov*, 852 F.3d at 1082 ("The question is whether the Act's requirement that businesses include an opt-out notice on *unsolicited* fax advertisements authorizes the FCC to require businesses to include an opt-out notice on *solicited* fax advertisements. Based on the text of the statute, the answer is no." (emphasis in original)).

In answering this question, the critical issue here is not whether a franchisor-franchisee relationship itself constitutes consent or prior express permission, at least in this case. Instead, there are documents entered into or received by Gorss Motels that ultimately provide the requisite "prior express invitation or permission." *See* 47 U.S.C. § 227(a)(5) ("The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise.").

First, the 2014 Franchise Agreement specifically addressed Worldwide Sourcing Solutions, Inc.'s Approved Supplier program, which provided that Wyndham "affiliates" may offer assistance in purchasing approved systems conforming to system standards. 2014 Franchise Agreement; *see id.* at 64, § 4.4 ("[Wyndham] may offer optional assistance to you with

purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf."). Second, the Franchise Disclosure Document, which Gorss Motels received in connection with the 2014 Franchise Agreement, stated that Worldwide Sourcing Solutions, Inc. "would be offering goods and services to Wyndham's franchisees and the franchisees of the Lodging Affiliates as defined below." *See* Pl.'s SMF ¶¶ 17-18 (undisputed) (quotations and citations omitted).

Gorss Motels provided its fax number to Wyndham in several documents, notably Gorss Motels's 2014 Franchise Agreement and the Franchise Disclosure Document. *See* Pl.'s SMF ¶¶ 46-53 (undisputed instances wherein Gorss Motels affirmatively provided its fax number to Wyndham); *see also id.* ¶ 45 ("Undisputed that Plaintiff periodically provided his fax number to Wyndham[.]"). Although Gorss Motels argues that these documents do not constitute prior express permission, but instead implied permission, *see* Pl.'s Opp'n at 12-17, in the signed 2014 Franchise Agreement and more documents, Gorss Motels affirmatively opted into receiving faxes.

Indeed, Gorss Motels executed both the 2014 Franchise Agreement and the Property Improvement Plan Report[6] and listed its fax number and agreed to receive information from its franchisor's affiliates and approved vendors. Significantly, Lands' End is one of these affiliates and approved vendors.

As the Court has already noted in *Gorss Motels v. Otis Elevator*:

> A recent summary judgment decision in a TCPA case involving Gorss Motels, from another Circuit and, although not binding on this Court, nevertheless is instructive. In *Gorss Motels, Inc. v. Safemark Systems*, "the faxes did not violate the prohibition on unsolicited

---

[6] Because Lands' End does not argue and there is no indication that Lands' End products or goods are implicated by the Property Improvement Plan Report, the Court does not rest its decision here on that document; the document, however, serves as another instance where Gorss Motels affirmatively provided its fax number and opted into receiving faxes from Wyndham and its affiliates.

faxes because the hotels had provided prior express permission to receive faxes from [the Defendant] in their franchise agreement." 931 F.3d 1094, 1096 (11th Cir. 2019). Although Gorss Motels similarly argued that it never provided prior express permission to receive faxes from Safemark, another Wyndham approved vendor, "their franchise agreements constitute an 'official act of allowing' Safemark the liberty to send them faxes." *Id.* at 1100 ("In their franchise agreements, the hotels agreed that Wyndham 'may offer optional assistance to [them] with purchasing items used at or in the Facility,' and they specifically agreed that Wyndham 'affiliates may offer this service on [Wyndham's] behalf.'").

"[B]ecause the franchise agreements contemplated that the hotels could receive optional assistance' with 'purchasing items' from Wyndham and its affiliates. . . . [b]y providing their fax numbers in their agreements, the hotels invited the assistance or advertisements to come by fax" *Id.* at 1101. Significantly, "testimony about what Steven Gorss subjectively thought is immaterial because the hotels had already provided their express permission in their franchise agreements." *Id.* at 1102.

2019 WL 4761212, at *12.

Here, as in *Safemark* and *Gorss Motels v. Otis Elevator*, Gorss Motels did not rescind the permission provided in the 2014 Franchise Agreement for Wyndham affiliates to contact it. *See* 931 F.3d at 1102; 2019 WL 4761212, at *12. The document was signed and executed by Gorss Motels, and authorized contact by facsimile, making the Faxes here solicited. Because the Faxes were solicited, no opt-out language was required on any of them. *See Bais Yaakov*, 852 F.3d at 1082 ("Although the Act requires an opt-out notice on unsolicited fax advertisements, the Act does not require a similar opt-out notice on *solicited* fax advertisements—that is, those fax advertisements sent with the recipient's prior express invitation or permission" (emphasis in original)); *see also* 47 U.S.C. § 227(a)(5) ("The term 'unsolicited advertisement' means [one] . . . without that person's prior express invitation or permission, in writing or otherwise.").

And because the Faxes were solicited, Lands' End did not violate the TCPA.

Accordingly, the Court will dismiss Gorss Motels's TCPA claim against Lands' End.

## C.  Liability Under Connecticut Law

Because the sole federal claim—the TCPA claim—has been dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see, e.g.*, *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1991) ("[I]f the federal claims are dismissed before trial . . . , the state claims should be dismissed as well.")).

## IV.    CONCLUSION

For the foregoing reasons, Lands' End's motion for summary judgment is **GRANTED**. The Clerk of the Court is respectfully requested to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of January, 2020.

   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

23